MCI TELECOMMUNICATIONS
CORPORATION, et al.,
Petitioners,

v.

FEDERAL COMMUNICATIONS COM-
MISSION and United States of
America, Respondents,

Sprint Corporation, et al., Intervenors.

Nos. 97–1675, 97–1685, 97–
1709 and 97–1713.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 8, 1998.

Decided May 15, 1998

John B. Morris, Jr. argued the cause for petitioners MCI Telecommunications Corporation, et al., with whom Donald B. Verrilli, Jr., Jodie L. Kelley, H. Richard Juhnke, Jay C. Keithley, Leon M. Kestenbaum, Robert L. Hoggarth, Scott Blake Harris and Kent D. Bressie were on the briefs.

Albert H. Kramer argued the cause for petitioner Illinois Public Telecommunications

Association, with whom Robert F. Aldrich was on the joint briefs.

Kenneth L. Doroshow, Attorney, Federal Communications Commission, argued the cause for respondents. Joel I. Klein, Assistant Attorney General, U.S. Department of Justice, Robert B. Nicholson and Robert J. Wiggers, Attorneys, Christopher J. Wright, General Counsel, Federal Communications Commission, Daniel M. Armstrong, Associate General Counsel, John E. Ingle, Deputy Associate General Counsel, and Laurel R. Bergold, Counsel, were on the brief. Laurence N. Bourne, Counsel, entered an appearance.

Michael K. Kellogg argued the cause for intervenors Ameritech Corporation, et al., with whom Albert H. Kramer, Robert F. Aldrich, Richard P. Bress, Karen Brinkmann and Bruce W. Renard were on the brief.

Danny E. Adams, Steven A. Augustino, James S. Blaszak, Carl W. Northrop, E. Ashton Johnston, Robert M. McDowell, Charles H. Helein, Daniel R. Barney, Robert Digges, Jr., Sarah F. Seidman, Howard J. Symons, David W. Carpenter, Mark C. Rosenblum, Genevieve Morelli, John J. Heitmann, Dana Frix, James M. Smith, Michael J. Shortley, III, Glenn B. Manishin, James E. Magee, Frederick M. Joyce, Christine McLaughlin, Wendy I. Kirchick, Charles C. Hunter, Catherine M. Hannan and Richard S. Whitt were on the joint brief of intervenors MCI Telecommunications Corporation, et al. Jay C. Keithley and Leon M. Kestenbaum entered appearances.

Before: EDWARDS, Chief Judge, SILBERMAN and ROGERS, Circuit Judges.

PER CURIAM:

Because the Federal Communications Commission ("Commission") failed to explain adequately its derivation of a rate for coinless payphone calls, we grant the petition for review in part and remand this case to the Commission for further proceedings.

I. BACKGROUND

The Telecommunications Act of 1996 ("the Act") required the Commission to promulgate regulations ensuring that payphone service providers would be "fairly compensated" for calls made on their payphones. *See* 47 U.S.C.A. § 276(b)(1)(A) (West Supp.1998). In *Implementation of the Pay Telephone Reclassification and Compensation Provisions of the Telecommunications Act of 1996,* Report and Order, CC Docket No. 96–128, FCC 96–388 (September 20, 1996), *reprinted in* Joint Appendix ("J.A.") 219 ("First Order"), the Commission decided to set the charge for coinless payphone calls at the same $.35 rate that it found was prevalent for coin calls in several states that had deregulated their payphone markets. In *Illinois Public Telecom. Ass'n v. FCC,* 117 F.3d 555, 563–64 (D.C.Cir.1997), the court vacated this portion of the First Order on the ground that the Commission had ignored record evidence that the costs of coinless payphone calls and coin calls differ markedly. *See id.*

On remand, in *Implementation of the Pay Telephone Reclassification and Compensation Provisions of the Telecommunications Act of 1996,* Second Report and Order, CC Docket No. 96–128, FCC 97–371 (October 9, 1997), *reprinted in* J.A. 1418 ("Second Order"), the Commission purported to derive a market-based rate for coinless calls. No discernible "market rate" for coinless payphone calls actually existed, because, prior to passage of the Act, payphone service providers never had been fully compensated for coinless calls. Nonetheless, the Commission constructed a market rate for coinless payphone calls by, first, starting with the $.35 rate, which it called the "market rate" for coin calls, and then subtracting costs of $.066 per call, which it found to be the difference between the costs of coinless and coin calls. *See* Second Order ¶ 42, J.A. 1436. This led the Commission to adopt a compensation rate of $.284 per coinless call from October 7, 1997, to October 6, 1999, after which the default rate would be determined by subtracting $.066 from the coin call rate in a given locale. Petitioners challenge the reasoning of the Commission's general approach as well as its specific computation of the $.066 cost differential.

## II. ANALYSIS

### A. *Ripeness*

■ All parties agree that the Second Order is a final order definitively establishing the disputed compensation rate. There is therefore no doubt that the court has jurisdiction to resolve the petitions for review. Although some parties other than Petitioners here have filed pending petitions for reconsideration before the Commission challenging the computation of the $.066 cost differential, neither the Commission nor the parties in the instant case contend that the matter before us is unripe for judicial disposition. Indeed, during oral argument, most counsel seemed to agree that prudential considerations militate in favor of a prompt judicial decision. We agree.

There is no reason for the court to delay deciding the issues now before us. This case presents a concrete legal issue regarding the reasonableness of the methodology used to derive the $.284 rate. This is a question that is ripe for judicial review. *See Better Government Ass'n v. Department of State*, 780 F.2d 86, 92–93 (D.C.Cir.1986). Additionally, the pending petitions for reconsideration raise issues related to and contingent on the central problem of the legitimacy of the Commission's methodology in establishing the $.284 rate; thus, resolution of the petitions for reconsideration will benefit from a resolution of the present case. Furthermore, the Commission has given no indication that it intends to reconsider its rate-setting approach, and its treatment of the petitions for reconsideration will not shed light on this threshold matter. In short, the instant case is ripe for review. We therefore proceed to the merits of the matters before us.

### B. *Merits*

■ Having examined the record thoroughly, we find the Commission's explanation of its derivation of the $.284 rate plainly inadequate. The Commission never explained why a market-based rate for coinless calls could be derived by subtracting *costs* from a *rate* charged for coin calls. If costs and rates depend on different factors, as they sometimes do, then this procedure would resemble subtracting apples from oranges. If the Commission simply subtracted one quantity from another, logically independent quantity, its action was unreasoned.

During oral argument, it was suggested that paragraph 42 of the Second Order suffices to justify the Commission's position in this case. *See* Second Order ¶ 42, J.A. 1436. But in this paragraph the Commission merely says that "[t]he majority of the costs associated with a payphone are joint and common costs that are shared by the different types of calls made by means of the payphone.... By making no adjustment to the coin rate for these costs, we conclude that each call placed at a payphone should bear an equal share of joint and common costs." This reasoning is utterly unhelpful in explaining why the Commission is correct in assuming that the "market rate" for coinless calls, from which costs are deducted, should be the same as the rate for coin calls.

The Commission's reasoning may have depended on the premise that the market rate for coin calls generally reflects the costs of those calls. This assumption would hold true in a competitive market in which costs and rate converge. Unfortunately, the Commission never went through the steps of connecting this premise with its reasoning in the Second Order. Nor did the Commission expressly claim that costs and rate do in fact converge in the coin call market: it merely rested on the assertion that "our approach continues to rely on market-based rate (the local coin rate)." Second Order ¶ 25, J.A. 1430. Some articulation of this crucial assumption was required, especially because the Commission itself has suggested that the assumption may not be accurate. The Commission acknowledged in the First Order that, because of locational monopolies and incomplete information endemic to the payphone market, the coin call rate may potentially diverge from coin call costs. *See* First Order ¶¶ 13–16, J.A. 226–28. In the Second Order, without explanation, the Commission merely declared itself "confident that market forces will keep payphone prices at competitive levels." Second Order ¶ 118, J.A. 1469.

In principle, a market-based rate—as opposed to a cost-based rate—could satisfy the

statutory fair compensation requirement. *See Illinois Public Telecom. Ass'n,* 117 F.3d at 563 ("A market-based approach is as much a compensation scheme as a rate-setting approach."). But some explanation of the logic of the derivation of the market-based rate is still required. In *Illinois Public Telecom. Ass'n,* we did not reach the question of the reasonableness of deriving a market-based rate for coinless calls from the coin call rate, because we found that there was unexplained record evidence contradicting the Commission's claim that the costs of coinless and coin calls were similar. *See id.* at 563–64. While we held that "it was not unreasonable for the Commission to conclude that market forces generally will keep prices at a reasonable level, thereby making locational monopolies the exception rather than the rule," *id.* at 562, this holding went to the Commission's decision to deregulate the coin call market, *not* to the question of whether coin call rates converge with costs.

## C. *Remedy*

▮ Although we conclude that the Commission did not adequately explain the action at issue here, we exercise our discretion to remand the rule for further explanation without vacating it. *See A.L. Pharma, Inc. v. Shalala,* 62 F.3d 1484, 1492 (D.C.Cir. 1995). One factor we consider in exercising such discretion is the potential for disruption that might be caused by vacating the order. *See id.* Here, vacating the order would leave payphone service providers all but uncompensated for coinless calls made from their payphones, and disrupt the business plans they have made on the basis of their expectation of compensation. However, the Commission must respond promptly to our remand. Congress required the Commission to prescribe regulations ensuring fair compensation "within 9 months after February 8, 1996," 47 U.S.C.A. § 276(b)(1), and this deadline has already passed. If, within six months from the issuance of our mandate, the Commission has not responded adequately to our remand, any adversely affected party may request effective relief from the court. *See Telecommunications Research and Action Ctr. v. F.C.C.,* 750 F.2d 70, 74–78 (D.C.Cir.1984).

We choose not to vacate the $.284 rate on the clear understanding that if and when on remand the Commission establishes some different rate of fair compensation for coinless payphone calls, the Commission may order payphone service providers to refund to their customers any excess charges for coinless calls collected pursuant to the current rate. The Commission itself has acknowledged that it has the authority to adjust the compensation rate retroactively "should the equities so dictate." *See Pleading Cycle Established for Comment on Remand Issues in the Payphone Proceeding,* CC Docket No. 96–128, FCC 97–1673 (Aug. 5, 1997), *reprinted in* J.A. 572; *see also In the Matter of Implementation of the Pay Telephone Reclassification and Compensation Provisions of the Telecommunications Act of 1996,* Memorandum Opinion and Order, CC Docket No. 98–128, FCC 98–642, 1998 WL 153171 (F.C.C.) (April 3, 1998); *In the Matter of Implementation of the Pay Telephone Reclassification and Compensation Provisions of the Telecommunications Act of 1996,* Memorandum Opinion and Order, CC Docket No. 96–128, FCC 98–481, 1998 WL 99371 (F.C.C.) (March 9, 1998).

▮ It is clear that the Commission has the authority to order refunds where overcompensation has occurred, on the basis of the statutory provision permitting the Commission to take such actions "as may be necessary in the execution of its functions." 47 U.S.C. § 154(i) (1994). In addition, the Telecommunications Act of 1996 requires the Commission to "take all actions necessary (including any reconsideration)" to promulgate regulations to ensure fair compensation to payphone service providers. *See* 47 U.S.C. § 276(b)(1). This language authorizes the Commission to order refunds where doing so is necessary to ensure fair compensation.

## III. CONCLUSION

The Commission's order is remanded for further proceedings consistent with the decision of the court.

610

*Petition for review granted in part; case remanded for further proceedings.*