**APCC SERVICES, INC.,
et al., Plaintiffs,**

v.

**CABLE & WIRELESS,
INC., Defendant.**

**No. CIV.A. 02–0158 ESH.**

United States District Court,
District of Columbia.

Sept. 3, 2003.

Leslie R. Cohen, Edward George Modell, Leon B. Kellner, Dickstein, Shapiro, Morin & Oshinsky, L.L.P., Washington, DC, for Plaintiffs.

Martin F. Cunniff, Robert H. Cox, Howrey Simon Arnold & White, LLP, Washington, DC, for Defendant.

## MEMORANDUM OPINION

HUVELLE, District Judge.

This case is one of several before the Court that have been brought pursuant to sections 206 and 207 of the Communications Act of 1934, as amended, 47 U.S.C. §§ 206, 207.[1] Plaintiffs in these cases seek to collect payment of so-called "dial-around compensation" from a common carrier of telephone calls pursuant to the compensation payment obligations mandated by section 276 of the Act and its implementing regulations. Plaintiffs are aggregators or clearinghouses and have brought suit as assignees of the claims of various payphone service providers ("PSPs").[2]

In each case, the Court faces the same initial hurdle of whether plaintiffs have Article III standing. While the Court initially dismissed one of these cases on March 28, 2003, finding that plaintiffs

lacked standing (*see APCC Services, Inc. v. AT & T Corp.,* 254 F.Supp.2d 135 (D.D.C.2003)), by a Memorandum Opinion issued today, it has granted reconsideration and reinstated that action, having now concluded that the assignments executed by the PSPs bestow on the aggregator-plaintiffs standing sufficient to survive an Article III challenge. Because Cable & Wireless, Inc. ("C & W") presents the same arguments for dismissal based on lack of standing as did AT & T, the Court's newly issued Memorandum Opinion in *AT & T* also resolves C & W's Motion to Dismiss for Lack of Subject Matter Jurisdiction.[3]

In light of its denial of C & W's motion to dismiss for lack of subject matter jurisdiction, the Court must now address the two remaining motions in this case: (1) C & W's Rule 12(b)(6) motion to dismiss on the grounds that plaintiffs cannot state a claim under section 276 because that statutory provision does not provide for a private right of action; and (2) plaintiffs' motion to amend to add additional grounds for relief under the Communications Act.[4]

---

1. *See also APCC Services, Inc. v. AT & T Corp.,* Civ. No. 99–0696 (D.D.C.) (*"AT & T"*), and *APCC Services, Inc. v. Sprint Communications Co.,* Civ. No. 02–0642 (D.D.C.).

2. PSPs own and operate over 400,000 public payphones throughout the United States.

3. In its reply, C & W presents a slightly new wrinkle on its standing argument. Pointing to the fact that plaintiffs and several PSPs have recently filed separate class actions to collect unpaid dial-around compensation (*see, e.g., D & B Telephones, Inc. v. Cable and Wireless, Inc.,* Civ. No. 03–1442 (D.D.C. June 30, 2003)), defendant argues that the plaintiffs could not have standing here based on the PSPs assignments, since the PSPs could not have both assigned their rights to the plaintiffs and retained their rights for purposes of bringing a class action. (C & W's Reply at 2–3.) The complaints in the class actions, however, explain that the suits were brought as a

result of the Court's earlier decision dismissing the *AT & T* case so that the PSPs could "proceed with their claims against C & W without undue delay if the Court adheres to the March 28, 2003 decision and dismisses their claims against C & W." (*D & B Telephones, Inc.,* Civ. No. 03–1442, Compl. at 2.) Thus, the class actions will only be prosecuted in the event that plaintiffs cannot pursue the PSPs claims as their assignees. And the filing of the class actions has no relevance to a determination of whether plaintiffs have standing based on the assignments.

4. Plaintiffs have also moved in all cases to amend their complaint to join the PSPs in the event that plaintiffs are found to lack standing. Since the Court has concluded that plaintiffs have standing, their motion to amend to add the PSPs is now moot.

## LEGAL ANALYSIS

### I. Private Right of Action

▉ The issue presented by C & W's motion is whether section 276(b)(1)(A) of the Communications Act and its implementing regulation, codified at 47 C.F.R. § 64.1300 *et seq*, confer a private right of action based on a common carrier's alleged failure to pay adequate dial-around compensation. Plaintiffs base their claims on sections 206 and 207 of the Act. Section 206 provides that if a common carrier "shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful ... such common carrier shall be liable to the person or persons injured thereby." 47 U.S.C. § 206. Section 207, in turn, permits the bringing of a suit "for the recovery of damages for which such common carrier may be liable under the provisions of this chapter." 47 U.S.C. § 207.

The Act addresses dial-around compensation in section 276(b)(1)(A), which directs the Federal Communications Commission (FCC) to prescribe regulations that "establish a per call compensation plan to ensure that all payphone service providers are fairly compensated for each and every completed intrastate and interstate call using their payphone." 47 U.S.C. § 276(b)(1)(A). While section 276 does not speak in terms of a private right of action, sections 206 and 207 clearly allow private suits to recover damages based on viola-

tions of rights protected by the Act. In this case, however, defendant argues that plaintiffs' claims are not actionable under those provisions because the claims do not allege a violation of section 276 itself, but only of the regulations promulgated pursuant thereto.[5] Defendant notes that section 276 is "merely a directive to the FCC to promulgate regulations regarding [the payment of] DAC [compensation]" and that, as a result, only the FCC's failure to create such regulations would amount to a violation. (Def.'s Mem. at 22–23.) Defendant contends that because it is only the regulation that requires specific payment, the failure to pay violates only the regulation, and thus cannot be enforced through the private right of action created by sections 206 and 207.

This very issue has been addressed by district courts with mixed results. *Compare Precision Pay Phones v. Qwest Communications Corp.*, 210 F.Supp.2d 1106, 1113 n. 3 (N.D.Cal.2002) (holding that private right of action exists to enforce section 276 regulations and citing cases reaching that conclusion), *with Phonetel Tech., Inc. v. Network Enhanced Telecomm.*, 197 F.Supp.2d 720, 722 (E.D.Tex.2002), *Greene v. Sprint Communications*, No. 02–CV–3841 (C.D.Cal. July 2, 2002), *appeal docketed*, No. 02–56339 (9th Cir.2002), *W. Communications Sys. v. Global Crossing Telecomm., Inc.*, No. 01–CV–1468 (S.D.Cal. Sept. 20, 2001) (holding that no private

---

5. The regulation provides in relevant part:
   (a) ... the first facilities-based interexchange carrier to which a completed coinless access code or subscriber toll-free payphone call is delivered by the local exchange carrier shall compensate the payphone service provider for the call at a rate agreed upon the parties by contract.
   &ast; &ast; &ast; &ast; &ast; &ast;
   (c) In the absence of an agreement as required by paragraph (a) of this section, the

carrier is obligated to compensate the pay phone service provider at a per-call rate of $.24.
47 C.F.R. § 64.1300.

right of action exists).[6]

No court in this jurisdiction has squarely confronted the issue of whether there is either an explicit or implied private right of action to sue for dial-around compensation. The D.C. Circuit has, however, recognized that where a local exchange carrier exceeds the maximum rate-of-return established by the FCC, the carrier thereby violates section 201(b)'s mandate that a carrier must maintain "just and reasonable" rates, 47 U.S.C. § 201(b), and the carrier's customer may sue for damages under section 206. *See MCI Telecommunications Corp. v. FCC,* 59 F.3d 1407, 1413–14 (D.C.Cir.1995). In reaching this conclusion, the Court reiterated its position that rate, as well as rate-of-return, prescriptions have the force of law. *Id.* While *MCI* is instructive, since the Court appears to recognize that an FCC order finding that a carrier violated a rate regulation is actionable under section 206, it does not completely resolve the issue here as it involved a challenge to an FCC order rather than a suit between private parties.

While the teaching of *MCI* is helpful, the most relevant case bearing on whether a private right of action extends to a violation of a regulation is *Alexander v. Sandoval,* 532 U.S. 275, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001), which defendant unfortunately does not meaningfully address. In *Sandoval,* the Supreme Court held that "[a] Congress that intends the statute to be enforced through a private cause of action intends the authoritative interpretation of the statute to be so enforced as well." *Id.* at 284, 121 S.Ct. 1511. The issue there was the existence of a private right of action to enforce regulations promulgated under section 602 of Title VI of the Civil Rights Act of 1964. Section 601 of Title VI prohibits recipients of federal funds from engaging in racial or national origin discrimination. It has been interpreted to prohibit only *intentional* discrimination and to provide a private right of action. *Id.* at 279–80, 121 S.Ct. 1511. Section 602 of Title VI authorizes federal agencies to promulgate regulations to effectuate section 601. The regulations at issue in *Sandoval,* promulgated under section 602, prohibit recipients of federal funds from engaging in facially neutral practices which have a disparate impact. Since the Court found that the regulations went beyond the substantive provisions of section 601, which bar only intentional discrimination, it concluded that the private right of action to enforce section 601 did not also encompass a right to enforce disparate-impact regulations. *Id.* at 281–82, 121 S.Ct. 1511. However, the Court affirmed that the regulations applying the ban on *intentional* discrimination provided for in section 601 came within the private right of action to enforce the statute. *Id.* at 284, 121 S.Ct. 1511.

*Sandoval*'s analysis is directly relevant here. The Supreme Court found that the "regulations applying § 601's ban on intentional discrimination are covered by the [private] cause of action to enforce that section," because "[s]uch regulations ... authoritatively construe the statute itself, ... and it is therefore meaningless to talk about a separate cause of action to enforce the regulations apart from the statute." *Id.* (citations omitted). In contrast, the Court found that "the disparate-impact regulations do not simply apply § 601— since they indeed forbid conduct that

---

**6.** As is obvious from these cases, common carriers have taken inconsistent positions on this issue. For instance, Global Crossing argued in favor of a private right of action in *W. Communications,* whereas Sprint took the opposite position in *Greene.* Curiously, in their cases before this Court, neither Sprint nor AT & T has advanced this argument for dismissing plaintiffs' suits.

§ 601 permits—and [it is] therefore clear that the private right of action to enforce section 601 does not include a private right to enforce these regulations." *Id.* at 285, 121 S.Ct. 1511.

Thus, the Supreme Court found that the private right of action contained in section 601 included a right to vindicate violations of the regulations implementing section 601's ban on intentional discrimination because the regulations simply interpreted and implemented the statute and did not substantively expand it. The same is true with the statutory provision (section 276(b)(1)(A)) and the regulation (47 C.F.R. § 64.1300) at issue here. *See Precision Pay Phones*, 210 F.Supp.2d at 1115 (applying *Sandoval* in this context). The statute is not merely a directive to the FCC as defendant suggests—it confers upon PSPs a right to be "fairly compensated for each and every completed intrastate and interstate call using their payphone[s]." 47 U.S.C. § 276(b)(1)(A). The regulation, in turn, simply provides the details necessary to implement the statutory right created by section 276. Like the intentional discrimination regulations in *Sandoval*,

> "[I]t is meaningless to talk about a separate cause of action to enforce" the FCC regulation at 47 CFR 64.1300 apart [from] its authorizing statute, 47 U.S.C. 276(b)(1)(A). A suit to enforce the right of PSPs under 276(b)(1)(A) to be "fairly compensated" would be meaningless without the FCC regulation which specifies the precise level of that compensation.

*Precision Pay Phones*, 210 F.Supp.2d at 1115 (quoting *Sandoval*, 532 U.S. at 284,

121 S.Ct. 1511).[7] And unlike the disparate impact regulations in *Sandoval*, which "did not simply fill in interstices left by the statute, but created a substantive standard which differed from the statute," *id.* at 1115, the rate prescriptions set forth by the FCC in 47 C.F.R. § 64.1300, constitute the "authoritative interpretation of the statute" under which they were promulgated. *Sandoval*, 532 U.S. at 284, 121 S.Ct. 1511. In other words, 47 C.F.R. § 64.1300 implements the Congressional mandate embodied in section 276(b)(1)(A) by specifying what it means to be "fairly compensated"; as such, when a common carrier violates the regulation, it is effectively doing something "declared to be unlawful" within the meaning of section 206 and is therefore subject to suit under section 207. The relationship between the regulation and the statute is direct and mutually reinforcing; the former gives definition and substance to the latter and does not create a different substantive standard. Thus, under *Sandoval*'s rationale, the regulation can be enforced by the statutes's private right of action and defendant's argument to the contrary must be rejected.

The cases on which defendant relies do not address *Sandoval*, but instead rely primarily on *Conboy v. AT & T Corp.*, 241 F.3d 242 (2d Cir.2001). This reliance, which defendant echoes, is misplaced for several reasons. First, *Conboy* was decided before *Sandoval*; as such, to the extent that the Second Circuit's decision can be read to preclude all private rights of action for violations of FCC regulations, that reasoning is inconsistent with that of the Supreme Court and thus cannot stand.[8]

---

**7.** *Precision Pay Phones* held in the alternative that an implied private right of action may be found under the analytical framework set forth in *Cort v. Ash*, 422 U.S. 66, 85, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). *Precision Pay Phones*, 210 F.Supp.2d at 1115. In light of its

conclusion that Congress has provided an express right of action that covers the claims brought in this case, this Court need not address the implied right of action issue.

**8.** Such a reading would also be arguably inconsistent with *MCI's* recognition that the

Moreover, *Conboy* dealt with different regulations, which governed the use of subscriber account information, and its holding as to the private right of action issue was expressly limited to those two regulations. *See* 241 F.3d at 252. So limited, this result is consistent with *Sandoval*, which instructs courts not to treat all regulations as enforceable by a private party, but rather, to carefully scrutinize the relationship between the authorizing statute and the regulations. *Sandoval*, 532 U.S. at 284, 121 S.Ct. 1511; *Precision Pay Phones*, 210 F.Supp.2d at 1115 n. 6. As discussed above, that relationship here is far tighter than it was in *Conboy* and thus supports a different result from the one reached there. Finally, and perhaps most significantly, *Conboy* had no reason to address the interplay of the regulations at issue and sections 206 and 207, as plaintiffs there had not alleged recoverable monetary damages under those statutory provisions. *Id.* at 247–48.

For these reasons, the Court concludes that plaintiffs have a right of action to challenge defendant's alleged failure to meet the dial-around compensation obligations imposed by section 64.1300, and will therefore deny C & W's 12(b) motion to dismiss.

## II. Plaintiffs' Motion to Amend

This leaves plaintiffs' motion to amend their complaint. Plaintiffs seek to add additional grounds for relief under the Communications Act that arise out of the same

alleged misconduct already set forth. Under FED. R. CIV. P.15(a), a party may amend a complaint after an answer is filed, but only with leave of court. In deciding whether to grant leave, a court should take into account whether there has been bad faith, undue delay or prejudice to the defendant, and should reject a proposed amendment that would be futile. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1084 (D.C.Cir.1998). If none of these factors is present, leave to amend "should, as the rules require, be 'freely given.'" *Foman*, 371 U.S. at 182, 83 S.Ct. 227 (quoting FED. R. CIV. P. 15(a)).

In their proposed amendment, plaintiffs seek to add a claim under 47 U.S.C. § 201(b), arguing that defendant's failure to fully and fairly compensate the PSPs, as required by 47 C.F.R. § 64.1300, is an unjust and unreasonable practice prohibited by section 201(b).[9] Plaintiffs also wish to assert violations of sections 416(c) and 407, both of which speak in terms of FCC "orders."[10] Plaintiffs assert that defendant's failure to meet the requirements of the dial-around compensation regulation amounts to a violation of an agency "order" within the meaning of these provisions. Defendant resists these amendments, arguing that section 201(b) does not confer a private right of action and that sections 407 and 416(c) are not concerned with violations of FCC rules, but rather only with violations of the agency's adjudi-

FCC's prescriptions as to rates and rates of return have the "force of a statute" and are actionable under section 206. *MCI*, 59 F.3d at 1414.

9. Section 201(b) declares unlawful "[a]ll charges [and] practices ... in connection with such communications service ... that [are] unjust or unreasonable."

10. Section 416(c) provides that "[i]t shall be the duty of every person, its agents and employees, and any receiver or trustee thereof, to observe and comply with such orders so long as the same shall remain in effect." Section 407 provides that "[i]f a carrier does not comply with an order for the payment of money," the person for whose benefit the order was made may sue for damages in district court.

catory orders. Each of these arguments is considered below.

### A. Section 201(b)

As the Court has concluded above, sections 206 and 207 establish a private right of action to sue common carriers for violations of the Act, as well as for regulations authoritatively interpreting its provisions. In *MCI*, this Circuit determined that the FCC may treat a violation of a regulation that establishes a rate (*i.e.,* a rate-of-return prescription) as a violation of section 201(b)'s requirement that a common carrier maintain "just and reasonable" rates and therefore as actionable under section 206. *MCI*, 59 F.3d at 1413–14. It follows from this that a violation of agency regulations setting forth a binding rate schedule for pay phone compensation similarly constitutes an unjust and unreasonable rate practice that is similarly actionable under sections 206 and 207.

In response, C & W cites to *US West, Inc. v. Business Discount Plan, Inc.*, 196 F.R.D. 576 (D.Colo.2000), and *Maydak v. Bonded Credit Co.*, 96 F.3d 1332 (9th Cir. 1996). These cases are of no assistance, since in both the plaintiff sued a non-common carrier, whereas sections 206 and 207 are expressly limited to damage claims against common carriers. Thus, in *US West*, the court concluded that because a plaintiff could not sue a non-common carrier under sections 206 and 207, it could not bring a private right action for damages against such an entity based on an alleged violation of section 201(b). *See* 196 F.R.D. at 588. *Maydak's* holding is also limited to the conclusion that no explicit or implied private action exists for a plaintiff to sue a non-common carrier. *See* 96 F.3d at

1334.[11] Therefore, although the section 201(b) claim appears not to add anything to plaintiffs' case beyond what is already covered by the claims expressly based on section 276 and its implementing regulations, the Court will allow this amendment. If these claims turn out merely to duplicate one another (as the Court's suspects), that issue can be resolved at a later date.

### B. Sections 416(c) and 407

Plaintiffs next argue that the FCC regulations requiring common carriers to compensate payphone service providers are "orders" for the purpose of these statutory provisions. As a result, they contend, defendant's alleged violation of these regulations amounts to a violation of sections 416(c) and 407, which violations are actionable under sections 206 and 207.

Citing the First Circuit's opinion in *New England Tel. & Tel. Co. v. Pub. Util. Comm'n*, 742 F.2d 1 (1st Cir.1984) (*"NETT"*), defendant argues that only adjudicatory orders and not FCC regulations constitute "orders" under the Communications Act. While the First Circuit based its interpretation of the word "order" on the definition contained in the Administrative Procedure Act ("APA"), *id.* at 5, as the Sixth Circuit notes, the great weight of authority goes the other way.

> The First Circuit has ruled that an order resulting from a rulemaking proceeding is not an order under § 401(b). Each of the other Circuits that has addressed this issue, however, has either implicitly or expressly found that such an order may be an order under § 401(b).

---

**11.** If anything, *Maydak* supports plaintiff's position, since it recognized that if plaintiff had sued AT & T (instead of a non-common carrier) for violating sections 203(a) and (c) of the Act, the court would have had subject matter jurisdiction under sections 206 and 207. *See* 96 F.3d at 1334.

*Alltel Tennessee, Inc. v. Tennessee Pub. Serv. Comm'n,* 913 F.2d 305, 308 (6th Cir. 1990). Indeed, the Ninth Circuit has explicitly rejected the proposition that the APA's definition of "order" should be imported into the Communications Act, explaining that "[w]hen Congress intended the APA's definition of a given term to be incorporated into the Communications Act, it said so." *Hawaiian Tel. Co. v. Pub. Utils. Comm'n,* 827 F.2d 1264, 1271 (9th Cir.1987) (citing 47 U.S.C. §§ 409(a)-(c), which expressly incorporates the APA's definition of "adjudication"). This Court agrees that the word "order" should not be so narrowly construed, and believes that a violation of FCC regulations regarding dial-around compensation is the kind of violation that Congress intended to prescribe when it enacted sections 416(c) and 407. Moreover, defendant has not argued that violations of those provisions are inadequate to support a private suit under sections 206 and 207. Accordingly, the proposed amendments cannot be rejected as futile. And because defendant has advanced no other basis for rejecting the amendments, the Court will grant plaintiffs' motion for leave to amend.

## CONCLUSION

For the reasons described above, the Court finds that the private right of action established under sections 206 and 207 of the Communications Act includes a private right of action for violations of section 276 and its implementing regulation, 47 C.F.R. § 64.1300. Accordingly, defendant's motion to dismiss is denied. In addition, the Court grants plaintiffs' motion for leave to amend to add additional grounds for relief and denies as moot plaintiffs' motion with respect to the joinder of the PSPs. A separate Order accompanies this Memorandum Opinion.

## ORDER

This matter is before the Court on defendant's motion to dismiss and plaintiffs' motion for leave to amend. Based on the pleadings, the record, and relevant case law, it is hereby

**ORDERED** that Defendant's Motion to Dismiss Plaintiffs' Complaint for Lack of Subject Matter Jurisdiction, or in the Alternative, for Failure to State a Claim [27–1] is **DENIED**; and it is

**FURTHER ORDERED** that plaintiffs' Motion for Leave to Amend Complaint [22–1] is **GRANTED IN PART** with respect to additional ground for relief and **DENIED AS MOOT** with respect to the joinder of plaintiffs.

**SO ORDERED.**