APCC SERVICES, INC., et al., Plaintiffs,

v.

AT & T CORPORATION, Defendant.

No. CIV.A. 99–0696 ESH.

United States District Court, District of Columbia.

Dec. 17, 2003.

C. Barry Montgomery, Edward R. Moor, Hall Adams, III, Williams, Montgomery & John, Chicago, IL, Jeffrey John Ward, Sean Michael Hanifin, Ross, Dixon & Bell, LLP, Washington, DC, Michael W. Ward, Buffalo Grove, IL, for Plaintiffs.

Clifford J. Zatz, Akin, Gump, Strauss, Hauer & Feld, LLP, Washington, DC, Kathryn Elizabeth Thiel, AT&T Telephone & Telegraph Company, Oakton, VA, for Defendant.

## MEMORANDUM OPINION

HUVELLE, District Judge.

Plaintiffs in this case, as well as in several others before the Court, seek payment from common carriers of "dial-around compensation" on behalf of payphone service providers ("PSPs") for certain long distance phone calls originating from their payphones.[1] They claim that the carriers have violated section 276(b)(1)(A) of the Communications Act of 1934, as amended, 47 U.S.C. § 276, and its implementing regulations, codified at 47 C.F.R. § 64.1300. Plaintiffs base their claims on sections 206 and 207 that provide for the recovery of damages for violations of the Act.

All of the cases before this Court present an initial question as to whether section 276 and its implementing regulations confer a private right of action to sue for a common carrier's alleged failure to pay adequate dial-around compensation. On September 4, 2003, the Court, upon motion to dismiss by Cable & Wireless, found that plaintiffs have a right of action and can base their claims on section 276. *APCC Servs., Inc. v. Cable & Wireless, Inc.*, 281 F.Supp.2d 52 (D.D.C.2003) ("*C & W*"). Consistent with that ruling, the Court also allowed plaintiffs to amend their complaint to add additional grounds under sections 201(b), 416(c) and 407 of the Communications Act.[2] *Id.* at 57–59. Sprint has requested that the Court reconsider its rulings and dismiss the amended complaint, or alternatively, certify the question for interlocutory appeal, basing its motion in large part upon the Ninth Circuit's recent holding in *Greene v. Sprint Communications Co.*, 340 F.3d 1047 (9th Cir.2003).[3]

---

**1.** Pending before this Court are four additional cases that raise nearly identical issues: *APCC Servs., Inc. v. Sprint Communications Co.*, Civ. No. 01–0642 (D.D.C.); *CFL v. AT & T Corp.*, Civ. No. 01–1531 (D.D.C.); *APCC Servs., Inc. v. WorldCom*, Civ. No. 01–0638 (D.D.C.) (stayed pending bankruptcy); and *APCC Servs., Inc. v. Cable and Wireless, Inc.*, Civ. No. 02–0158 (D.D.C.) (stayed pursuant to Cable & Wireless's suggestion of bankruptcy filed on December 10, 2003).

**2.** Applying its ruling in *C & W*, the Court also denied Sprint's motion to dismiss, and granted plaintiff's motion to amend in *APCC Services, Inc. v. Sprint Communications Co.*, Civ. No. 02–0642 (D.D.C.) (Order issued September 3, 2002).

**3.** Raising many of the same arguments against plaintiffs' right to sue that Sprint presents, C & W, prior to filing for bankruptcy, also filed a motion for reconsideration, or in the alternative, for certification of an interlocutory appeal, arguing that there is no private right of action under the Act. Curiously, AT & T, as defendant in two of the cases before the Court, has never challenged the

Four of these actions also present a question as to whether plaintiffs have Article III standing as assignees of the claims of numerous PSPs.[4] The Court initially dismissed one of these cases on March 28, 2003, finding that plaintiffs lacked standing (*see APCC Servs., Inc. v. AT & T Corp.*, 254 F.Supp.2d 135 (D.D.C.2003) ("*AT & T I*")), but upon reconsideration, it concluded that the assignments executed by the PSPs bestowed upon the aggregator-plaintiffs standing sufficient to survive an Article III·challenge. *See APCC Servs., Inc. v. AT & T Corp.*, 281 F.Supp.2d 41 (D.D.C. 2003) ("*AT & T II*"). AT & T has moved for reconsideration of the Court's second decision on the standing issue, or in the alternative, for certification of an interlocutory appeal.[5]

Whether the Act confers a private right of action to collect dial-around compensation from carriers is a controlling question of law, for it is dispositive as to all cases before the Court.[6] To the extent that a private right of action is found to exist, the issue of whether the assignees have standing to sue is also controlling, and is dispositive as to three of the five pending actions.[7] An immediate appeal to the Circuit Court of these issues will prevent potentially unnecessary and protracted litigation while definitively resolving these disputed jurisdictional issues. Thus, although the Court is unwilling to reconsider its prior

opinions in *C & W* and *AT & T II*, it will grant the carriers' motions for certification of an interlocutory appeal of both decisions.

## LEGAL ANALYSIS

Whether to allow an interlocutory appeal of a non-final order is left to the discretion of the district court. *Swint v. Chambers County Comm'n*, 514 U.S. 35, 47, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995). The court may certify such an appeal if (1) the order involves a controlling question of law; (2) a substantial ground for difference of opinion concerning the ruling exists; and (3) an immediate appeal would materially advance the litigation. *See* 28 U.S.C. § 1292(b); *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1002 n. 2 (D.C.Cir.1986); *In re Korean Air Lines Disaster*, 935 F.Supp. 10, 16 (D.D.C.1996). The party seeking interlocutory review has the burden of persuading the Court that the "circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *In re Vitamins Antitrust Litig.*, No. 99–197, 2000 WL 33142129, at *1 (D.D.C.2000) (citing *First Am. Corp. v. Al–Nahyan*, 948 F.Supp. 1107, 1116 (D.D.C.1996)).

In deciding whether to grant interlocutory appeal, the Court of Appeals in this Circuit follows the collateral order doc-

---

proposition that plaintiffs may sue under the Communications Act for the alleged failure to pay dial-around compensation.

4. This issue is not presented by *CFL v. AT & T Corp.*, Civ. No. 01–1531 (D.D.C.).

5. Prior to filing for bankruptcy, C & W also moved for reconsideration of the Court's decision on standing, or in the alternative, for certification of an interlocutory appeal.

6. Each of the cases is based upon the rights arguably conferred by § 276 and its implementing regulations. One plaintiff (Peoples

Telephone Company) in *APCC Servs., Inc. v. AT & T Corp.*, Civ. No. 99–0696, has brought a breach of contract claim as well, but the Court has no diversity jurisdiction over that claim, so without a private right of action under the Communications Act, the Court would have no basis to exercise jurisdiction over the contract claim.

7. There are a limited number of non-assignee plaintiffs named in *APCC Servs., Inc. v. AT & T Corp.*, Civ. No. 99–0696 (D.D.C.), and *CFL v. AT & T Corp.*, Civ. No. 01–1531 (D.D.C.), that would be unaffected by a decision that the assignee-plaintiffs lack standing.

trine, *see Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1026 (D.C.Cir.1997), which allows for appeal if it "(1) conclusively determines the disputed question, (2) resolves an important issue completely separate from the merits of the action, and (3) would be effectively unreviewable on appeal from a final judgment." *United States v. Rostenkowski*, 59 F.3d 1291, 1296 (D.C.Cir.1995) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)).

## I. Controlling Question of Law

■ Under § 1292(b), a "controlling question of law is one that would require reversal if decided incorrectly or that could materially affect the course of litigation with resulting savings of the court's or the parties' resources." *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group*, 233 F.Supp.2d 16, 19 (D.D.C.2002). Controlling questions of law include issues that would terminate an action if the district court's order were reversed. *See Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir.1990) (a question of law is controlling if it involves issues of personal or subject matter jurisdiction); *United States ex rel. Wis. v. Dean*, 729 F.2d 1100, 1103 (7th Cir.1984) (decision finding subject matter jurisdiction involves a controlling question of law); *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974) (a question is "controlling" if error in its resolution would warrant dismissal).

■ The resolution of an issue need not necessarily terminate an action in order to be "controlling," *Klinghoffer*, 921 F.2d at 24, but instead may involve a procedural determination that may significantly impact the action. *See In re The*

*Duplan Corp.*, 591 F.2d 139, 148 n. 11 (2d Cir.1978) (a "controlling question of law" includes procedural determination affecting the conduct of an action); *Judicial Watch*, 233 F.Supp.2d at 19 (citing *Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir.1991) (a question of law can be controlling if it determines the outcome "or even the future course of the litigation")); *see also* 16 Wright, Miller & Cooper, Federal Practice & Procedure, § 3930 at 426 (1996) ("A steadily growing number of decisions ... have accepted the better view that a question is controlling ... if interlocutory reversal might save time for the district court, and time and expense for the litigants."). The impact that the appeal will have on other cases is also a factor supporting a conclusion that the question is controlling. *See Klinghoffer*, 921 F.2d at 24 (citing *Brown v. Bullock*, 294 F.2d 415, 417 (2d Cir.1961) (leave to appeal granted in part because the "determination was likely to have precedential value for a large number of other suits")); *Genentech, Inc. v. Novo Nordisk A/S*, 907 F.Supp. 97, 99 (S.D.N.Y.1995) (a question is "controlling" if it affects a large number of cases).

Whether the Communications Act provides a private right of action to collect dial-around compensation is a controlling and dispositive question in each of the five cases, as reversal of the Court's finding would definitively terminate these actions. *See Masri v. Wakefield*, 602 F.Supp. 404, 406 (D.Colo.1983) (certifying question as to statutory private right of action). Similarly, if a private right of action is found to exist, the second jurisdictional issue of whether the assignee-plaintiffs have standing is also a controlling question of law. *See Klapper v. Commonwealth Realty Trust*, 662 F.Supp. 235, 236 (D.Del.1987).[8]

---

8. Plaintiffs incorrectly argue that because a determination of standing presents a mixed question of law and fact, certification would not be appropriate under section 1292(b). (*See* Pls.' Opp. to AT & T's Mot. at 21.) There is no dispute regarding the contents of the

Although claims by individual PSPs, which are limited in number, may survive the assignees' dismissal for lack of standing, assignee standing is a procedural determination that will significantly impact the form and conduct of these actions. Moreover, because the Court should not speak to any matter over which it lacks jurisdiction, the issue is controlling. *See In re Sealed Case*, 131 F.3d 208, 210 (D.C.Cir. 1997) ("If we are without subject-matter jurisdiction over the case ostensibly before us, then any pronouncement on any issue … becomes a violation of our Article III limitations.").

It is also significant that in addition to the five cases here, PSPs and aggregators have filed numerous suits throughout the country against common carriers based on a claim of a private right of action under the Communications Act, as well as an assertion of standing based on assignments executed by the PSPs.[9] Despite the rash of these cases countrywide, the parties in the cases in this jurisdiction are the major players in almost all the litigation countrywide, and the assignee-plaintiffs represent more than 400,000 of the 500,000 to 600,000 payphone lines in the United States. Moreover, the FCC, a frequent party before the D.C. Circuit, has dealt with cases similar to these [10] and has litigated issues relevant to this matter before the D.C. Circuit.[11] Therefore, it too would presumably have a significant interest in the resolution of these jurisdictional issues. The industry as a whole would thus benefit from a ruling from the Court of Appeals, for not only will the resolution of these issues be dispositive of the cases before this Court, but it will provide persuasive

---

assignments at issue here, and thus, there is no factual dispute that would convert the legal question of standing into a mixed question of law and fact. Rather, the problem is how the jurisprudence involving Article III standing should be applied to the undisputed facts.

9. The Court discussed many of these cases in its Memorandum Opinion issued in *APCC Servs., Inc. v. WorldCom, Inc.*, Civ. No. 01-638, 2001 U.S. Dist. LEXIS 23988, *18-22 (D.D.C. Dec. 21, 2001). For instance, suits have been filed in federal courts in Utah (*Flying J, Inc. v. Sprint Communications Co.*, Civ. No. 99-111-ST (D.Utah)), Virginia (*APCC v. VoCall Communications, Corp.* (E.D.Va.)), Pennsylvania (*see Phone-Tel Communications, Inc. v. AT & T Corp.*, 100 F. Supp 2d 313, 322 (E.D.Pa.2000)), Arizona (*GCB Communications, Inc. v. WorldCom, Inc.*, Civ. No. 00-1216 (D.Ariz.)), Texas (*see Phonetel Techs., Inc. v. Network Enhanced Telecom*, 197 F.Supp.2d 720 (E.D.Tex.2002)), California (*see, e.g., In re Qwest Communications Corp. Payphone Servs. Providers Compensation Litig.*, No. 02-ML-1483 (C.D.Cal.) (TJH) and cases collected in *C & W*, 281 F.Supp.2d at 54). Although some of these actions have been settled or dismissed, definitive resolution of the issues before the Court could have an impact on those cases that are still pending.

10. *See, e.g., Bell Atlantic–Delaware, Inc. v. MCI Telecomms. Corp.*, 17 F.C.C.R. 15, 918, 15, 919 (¶ 3), 2002 WL 1842441 (2002); *Flying J. Inc. and TON Services, Inc.*, Petition for Expedited Declaratory Ruling Regarding a Primary Jurisdiction Referral from the United States District Court for the District of Utah, Northern Division, Memorandum Opinion and Order, CCB/CPD No. 00-04, FCC 03-108, 2003 WL 21057292 (May 9, 2003); *In the Matter of the Pay Tel. Reclassification and Comp. Provisions of the Telecomm. Act of 1996*, CC Docket No. 96-128, 2003 FCC LEXIS 5370, 2003 WL 22283556 (Oct. 3, 2003). In fact, APCC currently has a dial-around compensation claim pending before the FCC. *See APCC v. Verizon Communications, Inc.*, FCC File No. EB-02-MDIC-0082.

11. *See, e.g., Sprint Corp. v. FCC*, 315 F.3d 369 (D.C.Cir.2003); *Verizon Tel. Cos. v. FCC*, 269 F.3d 1098 (D.C.Cir.2001); *Global Crossing Telecomm., Inc. v. FCC*, 259 F.3d 740 (D.C.Cir.2001); *APCC v. FCC*, 215 F.3d 51 (D.C.Cir.2000); *MCI Telecomm. Corp. v. FCC*, 143 F.3d 606 (D.C.Cir.1998); and *MCI Telecomm. Corp v. FCC*, 59 F.3d 1407 (D.C.Cir. 1995).

authority for courts in other jurisdictions, as well as for the FCC.

## II. Substantial Ground for Difference of Opinion

■ A substantial ground for difference of opinion is often established by a dearth of precedent within the controlling jurisdiction and conflicting decisions in other circuits. *See City Stores Co. v. Lerner Shops,* 410 F.2d 1010, 1011 (D.C.Cir.1969); *see also In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.,* 212 F.Supp.2d 903, 909–10 (S.D.Ind.2002) (certification is appropriate where other courts have adopted conflicting positions regarding the issue of law proposed for certification). A substantial ground for dispute also exists where a court's challenged decision conflicts with decisions of several other courts. *See Pub. Interest Research Group v. Hercules, Inc.,* 830 F.Supp. 1549, 1556 (D.N.J. 1993).

■ "The mere fact that a substantially greater number of judges have resolved the issue one way rather than another does not, of itself, tend to show that there is no ground for difference of opinion." *Vitamins,* 2000 WL 33142129, at *2 (citing *Daetwyler Corp. v. R. Meyer,* 575 F.Supp. 280, 283 (E.D.Pa.1983)). Instead, a court faced with a motion for certification must analyze the strength of the arguments in opposition to the challenged ruling to decide whether the issue is truly one on which there is a substantial ground for dispute. *Id.* Where "proceedings that

threaten to endure for several years depend on an initial question of jurisdiction ... or the like," certification may be justified even if there is a relatively low level of uncertainty. 16 Wright, Miller & Cooper, Federal Practice & Procedure, § 3930 at 422 (1996); *see also Atl. City Elec. Co. v. Gen. Elec. Co.,* 207 F.Supp. 613, 620 (S.D.N.Y.1962) (when there are reasons to conclusively and expeditiously determine an issue, a narrow approach is unjustified in determining whether there is a substantial ground for difference of opinion).

■ Although this Court believes that its prior decisions relating to the existence of a private right of action under the Communications Act and the standing of the plaintiffs-assignees are correct,[12] it also recognizes the arguments in support of contrary conclusions are not insubstantial. With respect to the private right of action, the Ninth Circuit in *Greene* found that since § 276 does not establish a right to compensation from common carriers, the complaint must be dismissed. 340 F.3d at 1052.[13] In so holding, the Ninth Circuit found that there was no basis for finding either an explicit or implied private right of action under sections 206, 207 or 276. In rendering its decision, the Court relied on the Supreme Court's decision in *Alexander v. Sandoval,* 532 U.S. 275, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001), as did this Court (*see* 281 F.Supp.2d at 55), but its more restrictive analysis of *Sandoval* led it to find no private right of action. Moreover, its ruling explicitly rejected the rea-

---

**12.** In this regard, it is noteworthy that after *Greene,* the FCC issued an Order that recognized that "[a] failure to pay in accordance with the Commission's payphone rules, such as the rules expressly requiring such payment that we adopt today, constitutes both a violation of section 276 and an unjust and unreasonable practice in violation of section 201(b) of the Act." *In the Matter of the Pay Tel. Reclassification and Comp. Provisions of the* *Telecomm. Act of 1996,* CC Docket No. 96–128, 2003 FCC LEXIS 5370, ¶ 32, 2003 WL 22283556 (Oct. 3, 2003).

**13.** While *Greene* was issued a week before this Court's decision in *C & W,* this Court was unaware of the *Greene* decision as the parties here, who were also involved in *Greene,* failed to bring it to the Court's attention.

soning of the one case upon which this Court relied (*see C & W*, 281 F.Supp.2d at 56)—*Precision Pay Phones v. Qwest Communications Corp.*, 210 F.Supp.2d 1106, 1115 (N.D.Cal.2002)—on the grounds that the California district court had incorrectly found a statutory right to fair compensation. *See Greene*, 340 F.3d at 1051 n. 4. Given the absence of any authority in this jurisdiction regarding this issue,[14] and an unanimous decision from an appellate court in another circuit on the same issue, a finding of a substantial difference of opinion as to whether the Communications Act provides for a private right of action is warranted.[15]

■ Similarly, with respect to the issue of Article III standing, there is substantial ground for difference of opinion as reflected by this Court's conflicting rulings in *AT & T I* and *AT & T II*, a recent decision by the Central District of California that found, without opinion, that plaintiffs lacked standing (*In re Qwest Communications Corp. Payphone Servs. Providers Compensation Litig*, No. 02-

ML–1483 (TJH) (C.D.Cal. August 15, 2003)), and the lack of any case law squarely on point.[16] To the extent that there is a private right of action under the Act, the issue of standing based on an assignment of rights presents a novel issue of whether the assignees can satisfy Article III's requirement of injury-in-fact. (*See* AT & T Mot. at 8) (citing *Raines v. Byrd*, 521 U.S. 811, 819, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997)) (the injury must affect the plaintiff in a personal and individual way). Defendants also argue, with some persuasiveness, that this Court's ruling would allow parties to evade the requirements for class action certification set forth in Fed.R.Civ.P. 23 and for associational standing established in *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). (*See* AT & T's Mot. at 14–15.)

Given these arguments, as well as the lack of any binding precedent, the Court must agree that, to the extent that a private right of action is found to exist, certi-

---

**14.** As this Court noted in *C & W*, this Circuit's decision in *MCI*, while relevant and instructive, does not resolve the issue here, since *MCI* involved a challenge to an FCC order, not a suit between private parties. *C & W*, 281 F.Supp.2d at 55.

**15.** Arguably, the Ninth Circuit's analysis in *Greene* also provides persuasive authority to deny plaintiffs' request to amend their complaints to add claims under §§ 201(b), 407 and 416(c). As this Court noted, these claims "appear not to add anything to plaintiffs' case beyond what is already covered by the claims expressly based on section 276" (*C & W*, 281 F.Supp.2d at 58), and thus, Sprint may be correct in arguing that these additional counts constitute nothing more than an attempt to recast plaintiffs' § 276 claim under other provisions of the Act. (Sprint's Mot. at 14.) Moreover, these proposed amendments would contravene *Greene's* observation that:
> a private right of action runs counter to this centralization of function [in the FCC] and to the development of a coherent national

communications policy. It would also put interpretation of a finely-tuned regulatory scheme squarely in the hands of private parties and some 700 federal judges, instead of in the hands of the Commission .... The result would be to deprive the FCC of necessary flexibility and authority in creating, interpreting, and modifying communications policy.

340 F.3d at 1053 (internal quotations and citations omitted).

**16.** Even the Supreme Court has acknowledged that its rulings on standing have been less than clear. *See Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 475, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) ("We need not mince words when we say that the concept of 'Article III standing' has not been defined with complete consistency in all the various cases decided by this Court which have discussed it ....").

fication of the issue of standing is also warranted.

## III. Material Advancement of the Disposition of the Litigation

Plaintiffs filed the first of these cases against AT & T in early 1999. On May 18, 2001, the Court appointed a special master to assist in overseeing the complicated discovery issues that were presented by that case. To date, the docket in the AT & T case contains more than 110 entries, representing a course of protracted litigation that is currently bogged down in discovery and will no doubt consume a significant amount of the parties' resources in the months and years to come. While the four related matters were not filed until 2001 and 2002, they too will undoubtedly present similarly daunting discovery issues.

For instance, as argued by AT & T, the cost of discovery related to the telephone calls alone will exceed any possible damages award, because "there are likely over *one billion* separate calls to argue about here." [17] (AT & T's Mot. at 15.) In fact, the parties have already expended a substantial amount of resources attempting to design acceptable protocols to analyze a selected 2000 phone calls and have spent more than $1 million relating to document discovery. (*See* AT & T's Mot. at 19; AT & T's Reply at 11 n. 5.) And, although significant efforts have been made to gather discovery, AT & T claims that because of the sheer volume of information involved, neither plaintiffs nor the carriers have any rational basis upon which to evaluate possible settlement—more than four years after the filing of the suit. (*See* AT & T's Mot. at 16.)

An immediate appeal would conserve judicial resources and spare the parties from possibly needless expense if it should turn out that this Court's rulings are reversed. *See Lemery v. Ford Motor Co.,* 244 F.Supp.2d 720, 728 (S.D.Tex.2002) ("It would pain the Court to see both attorneys ... [and parties] proceed to judgment after considerable expense and delay, only to discover that the judgment must be overturned on appeal because the federal judiciary lacks subject matter jurisdiction."). Resolution of this question would also assist many other courts in resolving similar disputes. *See Vitamins,* 2000 WL 33142129, at *2. Moreover, although plaintiffs argue correctly that they will be prejudiced by further delays, in the event that it is ultimately found that this Court lacks jurisdiction to litigate these cases, it would be far better for all concerned, including plaintiffs, to have these matters resolved now, as opposed to sometime in the distant future.

Finally, the Court is confident that appellate review of the jurisdictional issues presented satisfies the collateral order doctrine, as it would conclusively resolve important legal issues that are completely separate from the merits of the actions, and these issues will, as a practical matter, be effectively unreviewable following trial because of the enormous expense and time involved.[18] *See GTE New Media Servs.*

**17.** AT & T represents that in each case in which the aggregators are named as plaintiffs, each of the 1400 PSPs must demonstrate "that each call for which compensation is sought: (a) was made from their phone; (b) at a time when the local exchange carrier had Flex ANI available [and] operational on that particular line and that [the carrier defendant] received the signal; (c) was carried by [defendant]; (d) was answered by the recipient; and (e) was not paid for by [the carrier]." (AT & T's Mot. at 15.)

**18.** Plaintiffs claim there is a "long line of unambiguous precedent" establishing that the issue of standing is not effectively unreviewable on appeal from a final judgment, and thus fails to satisfy the collateral order doc-

*Inc. v. Ameritech Corp.*, 44 F.Supp.2d 313, 316 (D.D.C.1999) ("All indications thus far indicate that to reach final judgment the parties will probably undergo voluminous and burdensome discovery and possibly months of trial. To learn after that point, on appeal, that the parties should not have proceeded so far, and at such expense, would make the issue effectively unreviewable on appeal from final judgment.")

### CONCLUSION

Interlocutory review is warranted here because the interest in avoiding excessively burdensome and expensive litigation is "significant relative to the efficiency interests sought to be advanced by adherence to the final judgment rule." *United States v. Philip Morris Inc.*, 314 F.3d 612, 617 (D.C.Cir.2003). Although the Court recognizes that the collateral order doctrine should be sparingly invoked, these cases more than qualify for certification under 28 U.S.C. § 1292(b). Moreover, given the need for certification, the Court will grant defendants' request to stay discovery pending appeal, but it expects the parties to seek expedited review in the Court of Appeals.

The Court therefore grants the defendants' request for certification and a stay of discovery pending resolution of the appeal. A separate Order accompanies this Memorandum Opinion.

### ORDER

This matter is before the Court on defendant AT & T's Motion for Reconsideration or, in the Alternative, for Certification of an Interlocutory Appeal. Based on the pleadings, the record, and relevant case law, and for the reasons discussed in the

Court's accompanying Memorandum Opinion, it is hereby

**ORDERED** that defendant's motion for reconsideration is **DENIED**; it is

**FURTHER ORDERED** that defendant's motion for certification of interlocutory appeal is **GRANTED**; and it is

**FURTHER ORDERED** that *APCC Servs., Inc. v. Cable & Wireless, Inc.*, 281 F.Supp.2d 52 (D.D.C.2003) and *APCC Servs., Inc. v. AT & T Corp.*, 281 F.Supp.2d 41 (D.D.C.2003) are certified for immediate appeal pursuant to 28 U.S.C. § 1292(b) as they involve controlling questions of law as to which there is a substantial ground for difference of opinion, and an immediate appeal therefrom may materially advance the ultimate termination of this litigation; and it is

**FURTHER ORDERED** that discovery in the case is stayed pending action by the Court of Appeals, and the Clerk shall administratively close this case pending appeal.

**SO ORDERED.**

---

trine. (Pls.' Opp. to AT & T's Mot. at 25.) This authority, however, establishes only that a party may not, as of right, take immediate interlocutory appeal on the standing issue ab-

sent a Rule 54(b) certification from the district court, and thus, is not relevant here. *See Carringer v. Tessmer*, 253 F.3d 1322, 1323 (11th Cir.2001).