Zane GREENE; DL Communications, a California Partnership; Nate Brogin; Bay Distribution Services Inc., a California Corporation; C & M Telecommunications Inc., a California Corporation; C/B Tel Inc., a Washington Corporation; Carol Palumbo; Mahnoosh Afrashteh; Robert A. Cook; Covenany Development Inc., a Washington S–Corporation; Darrell Cheney, Easy Coin Vending Corporation, a New York S–Corporation; Expense Management Inc., a California Corporation; General Communication Services LLC, a California limited liability Company; Global Payphone Systems LLC, a Michigan limited liability company; Hanford Joint Union High School, a California Corporation; Heidi Miller; Dong Ju Lee; Roy Lange; Jon Adams; Jack O'Neal; Joe Lisha; Jo Ann Mogensen; Steve Littlejohn; Metrophone Telecommunications Inc., a Washington Corporation; Mike Golden; Charles Parsons; P & P Phones, a California Partnership; Pac Western, a California Partnership; Paycom Inc., a Washington Corporation; Paytel Communications Inc., a Washington Corporation; Paytel West Inc., a Washington Corporation; PC1 LLC, a California limited liability Company; Great Victoria Inc., a California Corporation; PBS Telecom, a California S–Corporation; Dudley Herndon Company, a California Corporation; Pinnacle Public Services LLC, an Oregon limited liability Company; Professional Communications, a Montana partnership; Royce Tawney; Richard Boren; Nevada Telephones Inc., a Nevada Corporation; Tom Schweikert; Jon S. Holler; Sandra J. Greenland; Western Communication Systems Inc., a California S–Corporation; Gregory J.

Wolfe, d/b/a Western Payphone Systems; Western Telephone Inc., a Nevada Corporation; Jeffrey M. White; William H. Ball, Plaintiffs–Appellants,

v.

SPRINT COMMUNICATIONS COMPANY, a Delaware limited liability Company; The First Group Inc., a New Jersey Corporation; Network Enhanced Technologies Inc., a California Corporation; Jenkintown LTD., a Pennsylvania Corporation; Williams Communications LLC, a Delaware limited liability Company; Cooperative Communications, a New Jersey Corporation, Defendants–Appellees.

No. 02–56339.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 9, 2003.

Filed Aug. 25, 2003.

Floyd A. Jensen, Ray, Quinney & Nebeker, Salt Lake City, Utah, and Joel F. Tamraz, Los Angeles, California, for the plaintiffs-appellants.

No appearance for defendants-appellees.

Albert H. Kramer, Dickstein Shapiro Morin & Oshinsky, Washington, D.C., for amici curiae American Public Communications Council, Inc., and APCC Services, Inc. Andrea Sheridan Ordin, Morgan, Lewis & Bockius, Los Angeles, California, for amicus curiae Qwest Communications Corporation.

Before KOZINSKI, FERNANDEZ, and RYMER, Circuit Judges.

## OPINION

RYMER, Circuit Judge:

Is there a private right of action to recover damages for violating regulations promulgated by the Federal Communica-

tions Commission (FCC) pursuant to § 276 of the Telecommunications Act of 1996 that require interexchange carriers to compensate payphone service providers for "dial-around" telephone calls made from their payphones? The district court held that there was not, and we agree. We therefore affirm dismissal of an action by Zane Greene and other payphone service providers against Sprint Communications Company, a long-distance telecommunications carrier, and several of its facilities-based resellers (collectively, Sprint).

I

Payphone service providers (PSPs) own payphones made available to the public. Sometimes they are paid directly by the caller, as when coins are deposited into the payphone; other times, they receive commission payments from the carrier to which 0+ calls are automatically routed by a presubscription agreement. However, access code calls and toll free calls are coinless calls. These calls are initiated over a PSP payphone and are routed over telecommunications networks and facilities such as those maintained by Sprint. The interexchange carrier (IXC) is paid for coinless calls through calling cards, credit cards, and the like. PSPs allege that Sprint was obliged by FCC regulation to compensate them for these "dial-around" calls.

Their theory is that Congress, in § 276(b)(1)(A) of the Telecommunications Act of 1996 (the Act), 47 U.S.C. § 276(b)(1)(A), directed the FCC to prescribe regulations that (except for certain emergencies) "establish a per call compensation plan to ensure that all payphone service providers are fairly compensated for each and every completed intrastate and interstate call using their payphone." Pursuant to this mandate the FCC promulgated regulations that require carriers, including Sprint and its facilities-based resellers, to compensate PSPs for all completed coinless calls where the caller uses a carrier other than the payphone's presubscribed carrier. 47 C.F.R. §§ 64.1300, 64.1301. Regulations also require each carrier to track or arrange for tracking of each compensable coinless call carried over its network. 47 C.F.R. § 64.1310. The complaint avers that this can be done with a high degree of accuracy and that, based on the data collected, Sprint is obliged to remit payment of payphone compensation to PSPs on a quarterly basis. PSPs and carriers may contract for a rate at which PSPs will be paid, or else PSPs must be paid at the default per call compensation rate established by the FCC. 47 C.F.R. § 64.1300. Sprint allegedly failed to pay the full amount of payphone compensation owed in violation of § 276 and the regulations, for which PSPs seek compensatory and punitive damages as well as attorney's fees under federal law, an accounting, and a recovery based on an account stated and quantum meruit under state law.

PSPs' complaint was filed in the district court. Before Sprint was served, the court sua sponte dismissed the action without prejudice for lack of subject matter jurisdiction. It held that there is no private right of action for violation of § 276 and the FCC payphone regulations.

PSPs appeal.[1]

II

PSPs contend that an express private right of action can be found in §§ 206 and

---

1. Qwest Communications Corporation, which is an IXC like Sprint and represents that it is a defendant in similar suits throughout the country, filed an amicus curiae brief in support of reversal. The Ameri- can Public Communications Council, Inc., and APCC Services, Inc., also filed an amici brief supporting Greene. APCC is a trade association that represents independent PSPs, and APCC is a dial-around compensa-

207 of the Act, that this private right of action is applicable to § 276, and that this necessarily implies a private right of action to enforce regulations adopted pursuant to—and within the scope of— § 276. Their fallback position is that a private right of action under § 276 and the regulations must be implied to carry out Congressional intent that PSPs be fairly compensated for use of their payphones.

### A

▮▮ It is axiomatic that private rights of action must be created by Congress. As *Alexander v. Sandoval*, 532 U.S. 275, 288, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001), instructs, we start with the statute itself. Section 276(b)(1)(A) provides:

In order to promote competition among payphone service providers and promote the widespread deployment of payphone services to the benefit of the general public, within 9 months after February 8, 1996, the [FCC] shall take all actions necessary (including any reconsideration) to prescribe regulations that—

(A) establish a per call compensation plan to ensure that all payphone service providers are fairly compensated for each and every completed intrastate

and interstate call using their payphone, except that emergency calls and telecommunications relay service calls for hearing disabled individuals shall not be subject to such compensation.

47 U.S.C. § 276(b)(1)(A). There is no question that § 276 itself does not create a private right of action. However, § 206 makes a common carrier such as Sprint who does anything prohibited, or fails to do anything required, by "this chapter" liable for damages. "[T]his chapter" includes § 276. Section 207, in turn, allows any person claiming to be damaged to make complaint to the FCC, or to bring suit for the recovery of damages in any district court.[2] Thus, if § 276 creates a right to compensation, and if it were violated, §§ 206 and 207 supply the right to sue.

Section 276 directs the FCC to come up with a plan for compensation, which the Commission did. But it does not establish a *right* to compensation, or to compensation by *IXCs*. The statute does not say "PSPs shall be entitled to fair compensation," or "IXCs shall pay PSPs." Because the private right of action created by §§ 206 and 207 extends only to violations of "this chapter," and § 276 does not require IXCs to compensate PSPs, there is no "violation" of § 276 for which a private

---

tion clearing-house that processes dial-around compensation claims on behalf of subscribing PSPs. APCC Services also indicates that it is a litigant in numerous actions in federal court and at the FCC to recover payment for its PSP clients.

**2.** Section 206 provides in full:

In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter,

together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case.

47 U.S.C. § 206. Section 207 provides:

Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the Commission as hereinafter provided for, or may bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both such remedies.

47 U.S.C. § 207.

action explicitly lies for payphone compensation.

PSPs argue that a private right of action is nevertheless implicit in the structure of the statute because the FCC is only authorized to regulate common carriers; § 276 specifically directs the FCC to provide for fair compensation to PSPs; therefore, Congress must have intended for the FCC to impose a payment obligation on all common carriers and to afford a private right of action through §§ 206 and 207 to enforce the compensation requirements. The difficulty is that Congress did not say that *IXC* s have to pay,[3] or that private persons may sue for violation of the *regulations*. It could easily have done so, as indeed it did elsewhere in the Act. Section 227, for example, authorizes an action for violation of the section "or the regulations prescribed under this subsection." 47 U.S.C. § 227(b)(3)(A). We decline to attribute a similar intent to the regulations prescribed by § 276 given that Congress knew how to create a private action for violating a regulation when it wanted to, yet did not include an action for violating the regulations contemplated by § 276 in the text of § 276, § 206, or § 207.

PSPs urge us to heed the observation in *Sandoval* that "it is ... meaningless to talk about a separate cause of action to enforce the regulations apart from the statute. A Congress that intends the statute to be enforced through a private cause of action intends the authoritative interpretation of the statute to be so enforced as well." *Sandoval*, 532 U.S. at 284, 121 S.Ct. 1511. However, as *Sandoval* itself illustrates, this is not true of all regulations. There, the Court held that private individuals could not sue to enforce disparate-impact regulations promulgated under § 602 of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*, even though a private right of action does exist to enforce disparate-treatment regulations under § 601. Section 601 provided that "no person ... shall ... be subjected to discrimination," while § 602 authorized federal agencies to effectuate the provisions of § 601 by regulations. The problem arose because disparate-impact regulations went beyond the proscription of § 601, which reaches only intentional discrimination, and "a 'private plaintiff may not bring a[suit based on a regulation] against a defendant for acts not prohibited by the text of [the statute].'" *Sandoval*, 532 U.S. at 286, 121 S.Ct. 1511 (quoting *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 173, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994)). "That right must come, if at all, from the independent force of § 602." *Id.* The Court found no freestanding right of action to enforce regulations under § 602 for several reasons, first among them being the absence of "rights-creating" language in § 602 by contrast with § 601. *Id.* at 288–89, 121 S.Ct. 1511. The lack of rights-creating language in § 276 is crucial here as well.[4]

**3.** The Commission in fact considered an alternative scheme under which the caller would deposit money directly into the payphone (a "caller pays" system), but concluded that IXCs should be responsible for access code and toll-free charges (a "carrier pays" system). *See* Notice of Proposed Rulemaking, Implementation of the Pay Telephone Reclassification and Compensation Provisions of the Telecommunications Act of 1996, CC Docket No. 96–128, 11 FCC Rcd 6716, ¶¶ 25–28 (re. June 6, 1996); Report and Order, Implementation of the Pay Telephone Reclassification and Compensation Provisions of the Telecommunications Act of 1996, 11 FCC Rcd 20541, ¶¶ 17, 83–85 (rel. Sept. 20, 1996).

**4.** We are not persuaded to the contrary by *Precision Pay Phones v. Qwest Communications Corp.*, 210 F.Supp.2d 1106, 1115 (N.D.Cal.2002), upon which PSPs rely, because it was premised on the existence of a statutory right to fair compensation.

In sum, there is no language in § 276 expressly conferring upon PSPs a right to fair compensation from IXCs. For this reason, there is no violation of the Act to be remedied through the private right of action afforded by §§ 206 and 207. Neither does § 276 itself, or through §§ 206 and 207, provide a private right of action to enforce regulations promulgated pursuant to § 276. This leaves only the fact that Congress articulated the objective of fair compensation for PSPs, and authorized the FCC to promulgate a plan to assure it, in § 276. However, we discern no intent to create a private right of action from these acts alone.

### B

■ Even if there is no private right of action through §§ 206 and 207 to collect payphone compensation, PSPs argue that one should be implied under *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). All of the *Cort* factors [5] are satisfied here, they submit, because § 276 identifies payphone service providers as a class to be protected; the purpose of § 276 coupled with the directive to the FCC to provide details of a compensation plan indicates a legislative intent to create a remedy for PSPs; implying a private remedy is consistent with the underlying purposes of § 276 to promote competition among PSPs and widespread deployment of payphone services to benefit the public; and the cause of action is not traditionally relegated to state law because deployment of payphones is a matter of national concern.

■ What we have said so far largely disposes of the *Cort* analysis, for "it is clear that the critical inquiry is whether Congress intended to create a private right of action." *Walls v. Wells Fargo Bank,* 276 F.3d 502, 508 (9th Cir.2002) (citing *Sandoval,* 532 U.S. at 286, 121 S.Ct. 1511). We think it did not. While it appears that Congress sought to ensure that PSPs are fairly compensated and intended for the FCC to formulate a plan to accomplish this, as the Second and Third Circuits have pointed out, "the purpose of the Telecommunications Act is not to benefit individual plaintiffs but to 'protect the public interest in communications.'" *Conboy v. AT & T Corp.,* 241 F.3d 242, 254 (2d Cir.2001) (quoting *Lechtner v. Brownyard,* 679 F.2d 322, 327 (3d Cir.1982) (quoting *Scripps–Howard Radio, Inc. v. FCC,* 316 U.S. 4, 14, 62 S.Ct. 875, 86 L.Ed. 1229 (1942))). The stated goal of § 276 is to "promote competition among payphone service providers and promote the widespread deployment of payphone services to the benefit of the general public." It is not for us to say whether a private remedial scheme to enforce a regulatory regime for payphone compensation would be a sensible, simpler, or better means to this end; that is for Congress to decide. *Central Bank of Denver,* 511 U.S. at 177, 114 S.Ct. 1439; *Sandoval,* 532 U.S. at 286–87, 121 S.Ct. 1511. In any event, as *Conboy* explains, the FCC is the agency that is primarily responsible for the interpretation and implementation of the Telecommunications Act and of its own regulations. *See, e.g., Conboy,* 241 F.3d at 251–54 (re-

---

**5.** The factors are:

First, is the plaintiff one of the class for whose especial benefit the statute was enacted ... that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Cort,* 422 U.S. at 78, 95 S.Ct. 2080 (citations and internal quotation marks omitted).

jecting an argument similar to PSPs' for implying a private right of action for violation of different FCC regulations); see also Implementation of the Pay Telephone Reclassification and Compensation Provisions of the Telecommunications Act of 1996, 11 FCC Rcd 20541, ¶¶ 112–114 (rel. Sept. 20, 1996) (discussing procedures for compliance and complaints), on reconsideration 11 FCC Rcd 21233 (rel. Nov. 8, 1996). To imply a private right of action runs counter to this centralization of function and to the development of a coherent national communications policy. It would also put interpretation of a finely-tuned regulatory scheme "squarely in the hands of private parties and some 700 federal district judges, instead of in the hands of the Commission.... The result would be to deprive the FCC of necessary flexibility and authority in creating, interpreting, and modifying communications policy." Conboy, 241 F.3d at 253 (quoting New England Tel. & Tel. Co. v. Public Utils. Comm'n, 742 F.2d 1, 6 (1st Cir.1984) (Breyer, J.)). This we are unwilling to do, particularly in an area where it is presumed that no private rights of action are intended. See Scripps Howard, 316 U.S. at 14, 62 S.Ct. 875; Maydak v. Bonded Credit Co. Inc., 96 F.3d 1332, 1333–34 (9th Cir.1996) (applying "presumption" that private litigants have standing only as representatives of the public interest); Lechtner, 679 F.2d 322 (same).

### Conclusion

There is no private right of action for the relief that PSPs seek, to recover damages for Sprint's alleged failure to pay compensation for dial-around calls as required by FCC regulations promulgated pursuant to § 276 of the Telecommunications Act. None appears explicitly in § 276, nor is any such remedy implicit in the private right of action recognized by §§ 206 and 207 for violations of § 276; § 276 does not create a right for PSPs to be compensated by IXCs or to sue for violation of the regulations. We decline to imply a private right of action primarily because Congress has manifested no intent to allow one, and other considerations pertinent to that inquiry do not counsel in favor of doing so. This being the case, there is no federal claim for PSPs to pursue. Accordingly, the district court properly dismissed the action.

AFFIRMED.