■ In the Matter of INDEPENDENT PAYPHONE ASSOCIATION OF NEW YORK, INC., et al., Appellants-Respondents, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Respondent, and VERIZON NEW YORK, INC., Respondent-Appellant. [774 NYS2d 197]—

Crew III, J. Cross appeals (1) from certain parts of a judgment of the Supreme Court (Stein, J.), entered July 31, 2002 in Albany County, which, inter alia, partially denied petitioner's application, in a proceeding pursuant to CPLR article 78, to set aside two determinations of respondent Public Service Commission approving permanent rates of respondent Verizon New

York, Inc., and (2) from certain parts of an order of said court, entered May 1, 2003 in Albany County, which, upon reconsideration, inter alia, modified the applicable date for determining controlling law.

In 1996, Congress amended the Telecommunications Act of 1934 (47 USC § 276) (hereinafter the Act) in an effort to deregulate pay phone service rates in order to promote free market competition in the pay phone industry. At the time of the enactment, pay phone services in the state were provided to the public by independent pay phone service providers (hereinafter PSPs), such as petitioner Teleplex Coin Communications, Inc., and local exchange carriers (hereinafter LECs), such as respondent Verizon New York, Inc. In order to offer pay phone service to the public, PSPs utilized LEC lines at rates established by the LECs and approved by respondent Public Service Commission (hereinafter PSC). The Act required that LEC line rates be cost-based, nondiscriminatory and compliant with the "new services" test that was promulgated to implement the Act (see 47 USC § 276; 47 CFR 61.49 [g], [h]). That test permits an LEC to recover its direct cost plus a reasonable amount of overhead in providing its access lines to PSPs.

The PSC thereafter directed LECs to file tariff rates by January 15, 1997 to become effective April 15, 1997. Accordingly, Verizon's predecessor filed new rates for its so-called "smart" lines, but left unchanged its rates for the preexisting "dumb" lines used by the PSPs to provide pay phone service to the public. Those rates were approved on a temporary basis.

Thereafter, the PSC invited comments on the tariffs submitted to it by the LECs. Petitioner Independent Payphone Association of New York, Inc., a trade association that represents owners and operators of independent public pay phones, and Teleplex registered a number of objections to Verizon's tariffs. When the PSC took no action in response to those objections, petitioners petitioned the PSC requesting that Verizon's tariffs be declared unlawful. That petition was denied. When petitioners' request for rehearing was likewise denied, petitioners commenced the instant proceeding pursuant to CPLR article 78 seeking to set aside the PSC's orders.

Supreme Court found, and the record reflects, that Verizon's tariff filing in December 1996 complied with the new services test regarding its new smart lines, but left in place the preexisting rates for the "dumb" payphone lines used by petitioners. Inasmuch as those rates were based upon "embedded" or historical costs, and not the forward-looking economic costs envisioned in the new services test, Supreme Court remanded

the matter to the PSC for determination of whether the preexisting tariffs complied with the new services test. Supreme Court further held that in the event that the preexisting rates were found not to be compliant and the new compliant rates proved to be lower than the preexisting rates, petitioners would be entitled to a refund or credit. Supreme Court denied the petition in all other respects. Petitioners appeal from certain portions of Supreme Court's judgment, and Verizon appeals from that portion of Supreme Court's judgment as determined that Verizon's tariffs were subject to a potential refund. Petitioners and Verizon also cross-appeal from Supreme Court's order, which, upon reconsideration, modified the applicable date for determining the controlling law.

During its initial review of Verizon's tariffs, the PSC refused to consider a March 2, 2000 order of the Common Carrier Bureau of the Federal Communications Commission relating to the implementation of the Act in Wisconsin (hereinafter the Wisconsin order), which enunciated certain rules or guidelines that LECs must follow in establishing rates for services needed by PSPs. Petitioners claim that Supreme Court was in error in that regard. We disagree.

It is axiomatic that an agency's determination should not be disturbed absent a finding that the determination has no rational basis or is without any reasonable support in the record (*see e.g. Matter of Owners Comm. on Elec. Rates v Public Serv. Commn. of State of N.Y.*, 194 AD2d 77, 80 [1993]). The Wisconsin order specifically provided that "this Order only applies to the LECs in Wisconsin specifically identified herein." Given that, it is difficult to discern how the PSC's determination that the terms of the Wisconsin order were not applicable to its considerations was irrational.

Next, petitioners contend that Supreme Court erred when it ruled that the PSC need not consider, on remand, the Wisconsin order and a further order issued January 31, 2002, which essentially affirmed the Wisconsin order but further explicated on the manner in which the new services tests must be applied. That order acknowledged the widespread confusion and inconsistent interpretations among the various state public service commissions regarding the implementation of the new services test.

Initially, we note that Supreme Court quite properly concluded that petitioners could have petitioned the PSC to change

Verizon's rates in response to the Wisconsin order.* They did not do so and, as such, they failed to exhaust their administrative remedies (*see generally Young Men's Christian Assn. v Rochester Pure Waters Dist.*, 37 NY2d 371, 375 [1975]). Moreover, at the time the PSC was considering Verizon's rates, the Wisconsin order was on appeal to the Federal Communications Commission and its terms were automatically stayed (*see* 47 USC § 155 [c] [3], [4]; 47 CFR 1.102 [a] [3]). Accordingly, the order could not be and properly was not considered by the PSC. Finally, the January 2002 order, while affirming much of the Wisconsin order, rejected a number of its premises and, thus, became the only order upon which petitioners may now rely. The issue then distills to whether the PSC should consider the January 2002 order upon remand. We think not.

It is axiomatic that rules promulgated by federal agencies may not be applied retroactively without the express permission of Congress (*see e.g. Bowen v Georgetown Univ. Hosp.*, 488 US 204, 208 [1988]). However, it is equally clear that retroactive application is not implicated where an order or ruling is merely interpretive (*see e.g. Wisconsin Bell v Bie*, 216 F Supp 2d 873, 878 [2002]). While the January 2002 order may be seen as interpretive in some respects, the provisions thereof providing that the new services test applies to usage services and that LECs must provide for a reduction or credit for the end user common line charge constitute new and substantive changes or additions to the interpretations of the new services test that existed at the time that the Wisconsin order was being reviewed. In short, the January 2002 order imposes mandatory rules to be employed by state public service commissions when approving tariffs that must be compliant with the new services test and, as such, it is not merely interpretive (*see Pickus v United States Bd. of Parole*, 507 F2d 1107, 1113 [1974]).

We differ with Supreme Court, however, with regard to its conclusion that petitioners will be entitled to a refund or credit in the event that the PSC concludes that new rates be established in accordance with the new services test and such rates prove to be lower than those presently in existence. The basis for Supreme Court's conclusion was a letter from representatives of Verizon's predecessor requesting an extension of time in which to review existing rates and file new rates if it were determined that the existing rates were not compliant with the

---

* Indeed, we are advised that, in March 2003, Independent Payphone filed a petition with the PSC requesting reconsideration of Verizon's rates and Verizon has submitted proposed rates and supporting studies, which currently are under review by the PSC.

new services test, proposing an agreement to refund or provide a credit to PSPs for the difference if the newly filed rates were lower than existing rates and requesting an order of the Federal Communications Commission granting a 45-day extension for filing new rates and ordering a refund in the event such new rates were indeed lower than existing rates. Suffice to say that new rates were not filed and the refund order was thus never effective. The fact that the PSC's prior approval of the preexisting rates has now been judicially called into question and the matter has been remanded for further consideration cannot be the basis of potential refunds that were only agreed to and contemplated for a period ending May 19, 1997.

Cardona, P.J., Carpinello, Rose and Lahtinen, JJ., concur. Ordered that the judgment and order are modified, on the law, without costs, by reversing so much thereof as directed respondent Public Service Commission to determine whether respondent Verizon New York, Inc. owed petitioners a refund; request for said refund denied; and, as so modified, affirmed.