# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued April 4, 2014                    Decided June 13, 2014

No. 13-1059

ILLINOIS PUBLIC TELECOMMUNICATIONS ASSOCIATION,
PETITIONER

v.

FEDERAL COMMUNICATIONS COMMISSION AND UNITED
STATES OF AMERICA,
RESPONDENTS

AT&T, INC. AND VERIZON,
INTERVENORS

———

Consolidated with 13-1083, 13-1149

———

On Petitions for Review of an Order of
the Federal Communications Commission

———

*Michael W. Ward* argued the cause for petitioners Illinois Public Telecommunications Association and Payphone Association of Ohio, Inc. *Keith J. Roland* argued the cause for petitioner Independent Payphone Association of New York. With them on the briefs were *Albert H. Kramer*, *Donald J. Evans*, and *Daniel S. Blynn*.

*Sarah E. Citrin*, Counsel, Federal Communications Commission, argued the cause for respondents. With her on the brief were *William J. Baer*, Assistant Attorney General, U.S. Department of Justice, *Robert B. Nicholson* and *Shana M. Wallace*, Attorneys, *Suzanne M. Tetreault*, Deputy General Counsel, Federal Communications Commission, *Jacob M. Lewis*, Associate General Counsel, and *Richard K. Welch*, Deputy Associate General Counsel. *Joel Marcus*, Attorney, Federal Communications Commission, entered an appearance.

*Aaron M. Panner* argued the cause for intervenors. With him on the brief were *Gary L. Phillips*, *Michael E. Glover*, and *Christopher M. Miller*.

Before: KAVANAUGH and WILKINS, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*:  Once upon a time, the only way to call home from a roadside rest stop or neighborhood diner was to use a payphone.  Some payphones were owned by independent payphone providers.  Other payphones were owned by Bell Operating Companies.  The Bell Operating Companies also happened to own the local phone lines.  To ensure fair competition in the payphone market, Congress prohibited Bell Operating Companies from exploiting their control over the local phone lines to discriminate against other payphone providers in the upstream payphone market. Specifically, Congress prohibited Bell Operating Companies from subsidizing their own payphones or charging discriminatory rates to competitor payphone providers.  *See* 47 U.S.C. § 276.  This case concerns the remedies available

for violations of that prohibition – in particular, whether independent payphone providers who were charged excessive rates by Bell Operating Companies are entitled to refunds or instead are entitled only to prospective relief in the form of lower rates.

We conclude that Congress granted discretion to the Federal Communications Commission to determine whether refunds would be required in those circumstances and that the Commission reasonably exercised that discretion here.

I

Petitioners are trade associations representing independent payphone providers in Illinois, New York, and Ohio. Since the mid-1980s, independent payphone providers have competed with Bell Operating Companies in the consumer payphone market. At first, Bell Operating Companies had a built-in advantage. In addition to operating some payphones, Bell Operating Companies owned the local phone lines that provide service to *all* payphones. An independent payphone provider was thus "both a competitor and a customer" of the local Bell Operating Company. *Davel Communications, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1081 (9th Cir. 2006). And that Bell Operating Company could exploit its control over the local phone lines by charging lower service rates to its own payphones or higher service rates to independent payphone providers. *See New England Public Communications Council, Inc. v. FCC*, 334 F.3d 69, 71 (D.C. Cir. 2003).

To prevent unfair competition in the payphone market, Congress included a payphone services provision in the Telecommunications Act of 1996. *See* Pub. L. No. 104-104, § 151(a), 110 Stat. 56, 106. That provision, codified as a new

Section 276 of the Communications Act of 1934, states that a Bell Operating Company may not "subsidize its payphone service directly or indirectly" or "prefer or discriminate in favor of its payphone service." 47 U.S.C. § 276(a). To implement those statutory proscriptions, Congress directed the FCC to prescribe regulations governing Bell Operating Company rates. *See id.* § 276(b)(1)(C). And to ensure that state laws would not undermine the statutory proscriptions, Congress provided that "[t]o the extent that any State requirements are inconsistent with the Commission's regulations, the Commission's regulations on such matters shall preempt such State requirements." *Id.* § 276(c).[1]

The FCC and the payphone industry have traveled a long and winding road in implementing Section 276. We recount here only those developments relevant to this case.[2]

In 1996, the FCC issued an initial set of orders implementing Section 276. Those orders required Bell Operating Companies to file tariffs demonstrating that the rates they charged to independent payphone providers complied with the requirements of Section 276. The FCC directed Bell Operating Companies to file those tariffs with *state* regulatory commissions by January 1997. The FCC

---

[1] The full text of Section 276 is reprinted as an appendix to this opinion.

[2] Our prior Section 276 cases describe the implementation of the provision in greater detail. *See AT&T Corp. v. FCC*, 363 F.3d 504 (D.C. Cir. 2004); *New England Public Communications Council, Inc. v. FCC*, 334 F.3d 69 (D.C. Cir. 2003); *Global Crossing Telecommunications, Inc. v. FCC*, 259 F.3d 740 (D.C. Cir. 2001); *American Public Communications Council v. FCC*, 215 F.3d 51 (D.C. Cir. 2000); *MCI Telecommunications Corp. v. FCC*, 143 F.3d 606 (D.C. Cir. 1998); *Illinois Public Telecommunications Association v. FCC*, 117 F.3d 555 (D.C. Cir. 1997).

directed the state regulatory commissions to review the tariffs for compliance with Section 276 based on a pricing standard known as the "new services test." State commissions that were unable to review the tariffs could order Bell Operating Companies in their states to instead file tariffs with the FCC. *See* Order on Reconsideration, *Implementation of the Pay Telephone Reclassification and Compensation Provisions of the Telecommunications Act of 1996*, 11 FCC Rcd. 21,233, 21,308 ¶ 163 (1996); Report and Order, *Implementation of the Pay Telephone Reclassification and Compensation Provisions of the Telecommunications Act of 1996*, 11 FCC Rcd. 20,541, 20,614-15 ¶¶ 146, 147 (1996).

In Wisconsin, independent payphone providers challenged the rates charged by Bell Operating Companies as unlawful under Section 276. In 2002, in response to the Wisconsin litigation, the FCC issued additional guidance on the pricing standard that state commissions must apply in determining whether Bell Operating Company rates comply with Section 276. *See* Order Directing Filings, *Wisconsin Public Service Commission*, 17 FCC Rcd. 2051, 2065-71 ¶¶ 43-65 (2002). The FCC's new guidance led a number of states to conclude that Bell Operating Companies had been charging excessive rates. Bell Operating Companies in those states thus had to (and did) reduce their rates going forward. But the independent payphone providers sought more than just *prospective* relief. They argued that they were entitled to refunds dating back to 1997. Some state regulatory commissions and courts agreed and granted full refunds. Other states granted partial refunds. Some states granted no refunds. *See* Declaratory Ruling and Order, *Implementation of the Pay Telephone Reclassification and Compensation Provisions of the Telecommunications Act of 1996*, 28 FCC Rcd. 2615, 2621 ¶ 11 & n.37 (2013) (*Refund Order*).

Three state proceedings are relevant here. In Illinois, the state commission and state courts declined to order refunds primarily because of the filed-rate doctrine, which prohibits retroactive revisions to rates that a government regulatory body has approved. *See Illinois Public Telecommunications Association v. Illinois Commerce Commission*, No. 1-04-0225 (Ill. App. Ct. Nov. 23, 2005). In New York, the state commission and state courts have thus far declined to grant refunds but have left the question open pending resolution of the independent payphone providers' petition in this case. *See Independent Payphone Association of New York, Inc. v. Public Service Commission of New York*, 774 N.Y.S.2d 197 (N.Y. App. Div. 2004). And in Ohio, the state commission awarded partial refunds but the state commission and state courts denied the request for refunds back to 1997 based on the filed-rate doctrine and state procedural grounds. *See Payphone Association of Ohio v. Public Utilities Commission of Ohio*, 849 N.E.2d 4 (Ohio 2006).

Having failed to gain retrospective relief through state regulatory or judicial proceedings, independent payphone providers from Illinois, New York, and Ohio sought a declaratory ruling from the FCC. *See* 47 C.F.R. § 1.2 (authority to issue declaratory rulings). They asked the Commission to declare that Section 276 created an absolute entitlement to refunds dating back to 1997 and that the state commissions and courts had violated federal law by denying relief. The Commission rejected that position. After considering the text, history, and purpose of Section 276, the Commission concluded that states "may, but are not required to, order refunds" for periods dating back to 1997 in which a

Bell Operating Company did not have compliant rates in effect. *Refund Order*, 28 FCC Rcd. at 2639 ¶ 47.[3]

The independent payphone providers filed petitions for review in this Court. *See* 28 U.S.C. § 2342(1); 47 U.S.C. § 402(a). We assess the FCC's ruling under the Administrative Procedure Act. We must determine whether the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

## II

The independent payphone providers challenge the FCC's decision on three primary grounds. They contend that the *Refund Order* violates Section 276(a), violates Section 276(c), and constitutes an arbitrary and capricious exercise of the FCC's discretion. We consider those arguments in turn.

## A

The independent payphone providers first contend that the FCC's *Refund Order* unambiguously violates Section 276(a). That provision says that a Bell Operating Company "shall not subsidize its payphone service directly or indirectly from its telephone exchange service operations or its

---

[3] The dispute here concerns only retrospective relief. As the FCC noted, "no party to this proceeding is contending today that the payphone line rates are currently out of compliance with" Section 276 "or otherwise inconsistent with federal law; rather, the sole question is whether certain states improperly denied refunds." Declaratory Ruling and Order, *Implementation of the Pay Telephone Reclassification and Compensation Provisions of the Telecommunications Act of 1996*, 28 FCC Rcd. 2615, 2635 ¶ 41 (2013) (*Refund Order*).

exchange access operations" and "shall not prefer or discriminate in favor of its payphone service." 47 U.S.C. § 276(a). In the independent payphone providers' view, Section 276(a) establishes an absolute entitlement to refunds for periods in which the statute was violated.

The problem for the independent payphone providers is that Congress said nothing of the sort. In cases where a Bell Operating Company violates the proscriptions established by Section 276(a), the statute does not say whether only prospective relief is in order, or whether retrospective relief is also required. In particular, Section 276(a) does not say that refunds are required, or that refunds are not required, or anything at all about refunds. Rather, as this Court has previously recognized, Section 276(a) is "silent regarding the mechanism the FCC should adopt to ensure that the statute's requirements are carried out." *Global Crossing Telecommunications*, *Inc. v. FCC*, 259 F.3d 740, 744 (D.C. Cir. 2001).

Section 276(a)'s silence on refunds is telling given that Congress has expressly specified refund remedies in other sections of the Communications Act of 1934 and related statutes. *See* 47 U.S.C §§ 228(f)(1), 543(c)(1)(C); *see also* 15 U.S.C. § 5711(a)(2)(I). Indeed, several of those provisions originated in statutes enacted shortly before the Telecommunications Act of 1996, an indication that Congress in 1996 was fully capable of specifying a refund remedy when it wanted to require one. *See* Telephone Disclosure and Dispute Resolution Act, § 101, Pub. L. No. 102-556, 106 Stat. 4181, 4185 (1992); Cable Television Consumer Protection and Competition Act of 1992, § 3(a), Pub. L. No. 102-385, 106 Stat. 1460, 1468. Congress's decision not to include a refund remedy in Section 276 thus suggests that it intended to leave remedial discretion with the Commission. That

9

interpretation is consistent with the general principle that agencies ordinarily have wide discretion to shape remedies for statutory violations. *See AT&T Co. v. FCC*, 454 F.3d 329, 334 (D.C. Cir. 2006).

In sum, Section 276(a) does not speak to the refund question. And one of the first principles of administrative law is that "if the statute is silent or ambiguous with respect to the specific issue," the only question for the court is whether the agency's interpretation of that statute is reasonable. *City of Arlington v. FCC*, 133 S. Ct. 1863, 1868 (2013) (quoting *Chevron U.S.A. Inc. v. NRDC*, 467 U.S. 837, 843 (1984)). Whatever the policy virtues of the independent payphone providers' position, we will not read into the statute a mandatory provision that Congress declined to supply. *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 93 (2012) (omitted-case canon). We instead conclude that FCC has discretion to fill Section 276's gap with a reasonable approach to the refund question. *Cf. Global Crossing*, 259 F.3d at 744-45; *Illinois Public Telecommunications Association v. FCC*, 117 F.3d 555, 567-68 (D.C. Cir. 1997). And for reasons explained in greater depth below, the Commission's decision was reasonable.[4]

---

[4] In their reply brief, the independent payphone providers contend that the FCC's discretion is constrained by Section 206 of the Communications Act, which provides that a carrier violating the Act "shall be liable to the person or persons injured thereby for the full amount of damages sustained." 47 U.S.C. § 206. By failing to raise this issue until their reply brief, the independent payphone providers forfeited the argument. We therefore do not consider it. *See Lake Carriers' Association v. EPA*, 652 F.3d 1, 10 n.9 (D.C. Cir. 2011).

B

The independent payphone providers next contend that the *Refund Order* contravenes Section 276(c). That provision says that "[t]o the extent that any State requirements are inconsistent with the Commission's regulations, the Commission's regulations on such matters shall preempt such State requirements." 47 U.S.C. § 276(c). The independent payphone providers argue that the FCC's 2013 *Refund Order* permits refunds dating back to April 1997, and that any state decision denying refunds is "inconsistent with the Commission's regulations" and preempted. *Id.*

That argument rests on a misreading of the FCC's *Refund Order*. The Commission repeatedly explained that states "*may*, but *are not required to*, order refunds" for any period in which Bell Operating Companies charged non-compliant rates. *Refund Order*, 28 FCC Rcd. at 2639 ¶ 47 (emphases added); *see id.* at 2636 ¶ 42 n.178 (same); *id.* at 2640 ¶ 49 (same). Put differently, the fact that states *may* order refunds does not mean that states *must* order refunds. Therefore, a state commission or state court decision that considers a Section 276 claim and denies refunds – as happened in the three states at issue here – is not inconsistent with the FCC's regulations and is not preempted. *See id.* at 2634-35 ¶¶ 40-41. That conclusion is further buttressed by the deference that this Court affords to the FCC's reasonable interpretations of its own regulations. *See Auer v. Robbins*, 519 U.S. 452, 461 (1997); *Global Crossing*, 259 F.3d at 746.

In a twist on their Section 276(c) preemption argument, the independent payphone providers contend that the FCC's reliance on state refund determinations constitutes an unlawful subdelegation of federal authority to the States. As an initial matter, states do not require any subdelegation of

authority from the FCC to adjudicate federal statutory claims. In our federal system, state tribunals have the constitutional authority and duty to apply federal statutes and determine statutorily appropriate remedies. *See* U.S. Const. art. VI, cl. 2; *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) ("State courts are adequate forums for the vindication of federal rights."); *Tafflin v. Levitt*, 493 U.S. 455, 470 (1990) (Scalia, J., concurring) ("As Congress made no provision concerning the remedy, the federal and the state courts have concurrent jurisdiction.") (alteration omitted). Indeed, the independent payphone providers do not contest the FCC's decision to have state regulatory commissions determine whether Bell Operating Company rates comply with Section 276 in the first instance. *See* Oral Arg. at 3:41-4:07. They object only to the FCC's decision not to override state decisions denying refunds in particular cases. But Congress said nothing about *who* should decide whether to award refunds for violations of Section 276. That statutory silence sets this case apart from *United States Telecom Association v. FCC*, 359 F.3d 554 (D.C. Cir. 2004), the leading example of an unlawful subdelegation relied upon by the independent payphone providers. In the statutory provision at issue in that case, Congress had expressly directed "*the Commission*" to make certain determinations. 359 F.3d at 565 (emphasis added). As the FCC correctly explained here, "Nothing in section 276 requires that the Commission be the arbiter of specific refund disputes." *Refund Order*, 28 FCC Rcd. at 2635 ¶ 41. We therefore reject the subdelegation claim.

## C

Because the FCC's interpretation in the *Refund Order* is not inconsistent with Section 276(a) or Section 276(c), the only remaining question is whether the Commission's approach was arbitrary or capricious. *See Chevron*, 467 U.S.

at 844. That is not a high bar for the FCC to clear. As this Court explained in another Section 276 case: "Although the enforcement regime chosen by the Commission may not be the only one possible, we must uphold it as long as it is a reasonable means of implementing the statutory requirements." *Global Crossing*, 259 F.3d at 745.

Here, the FCC readily satisfied that deferential standard. The Commission reasonably concluded that "states, as part of their tariff review responsibilities, are well-positioned to resolve refund disputes arising from the tariffs they review." *Refund Order*, 28 FCC Rcd. at 2636 ¶ 42. The FCC recognized that it was not adopting a "single, federal policy" governing refunds and that some state-to-state variation would naturally result. *Id.* at 2636 ¶ 42 n.178; *see id.* at 2640 ¶ 48. Moreover, an independent payphone provider can opt for a federal decisionmaker by suing a Bell Operating Company for a Section 276 violation in federal court. *See* 47 U.S.C. § 207. And of course, a party who believes that a state court has misapplied federal law can ultimately seek review of the state court judgment in the U.S. Supreme Court. *See* U.S. Const. art. III, §§ 1, 2; 28 U.S.C. § 1257. The Illinois independent payphone providers unsuccessfully sought to do just that. *See* 549 U.S. 1205 (2007) (denying certiorari).

The independent payphone providers contend that the FCC's approach is arbitrary and capricious because it leads to refund determinations that vary from state to state. But there is nothing inherently arbitrary or capricious about state-to-state variation, especially in the administration of a statute based in part on cooperative federalism – that is, a statute that relies in part on states to implement federal law. *See generally* Heather K. Gerken, *Federalism as the New Nationalism: An Overview*, 123 YALE L.J. 1889 (2014); Abbe R. Gluck, *Our [National] Federalism*, 123 YALE L.J. 1996

(2014). As this Court has explained, the Communications Act establishes a "system of dual state and federal regulation over telephone service" that recognizes states' traditional role in the rate regulation process. *New England Public Communications Council, Inc. v. FCC*, 334 F.3d 69, 75 (D.C. Cir. 2003) (quoting *Louisiana Public Service Commission v. FCC*, 476 U.S. 355, 360 (1986)); *see* 47 U.S.C. §§ 151, 152(b); *see also City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 128 (2005) (Breyer, J., concurring) (Communications Act based on "cooperative federalism" framework). The Act authorizes the FCC to preempt state law in certain areas, and the FCC has exercised that authority by requiring states to review Bell Operating Company tariffs under a uniform national pricing standard. *See New England Public*, 334 F.3d at 75-78. But there is nothing arbitrary or capricious about the FCC's decision not to further exercise its preemptive power to dictate a uniform national answer to the refund question, especially given the backdrop of state involvement in the ratemaking process. *Cf. Batterton v. Francis*, 432 U.S. 416, 430 (1977) (federal agency can defer to local definition of "unemployment" in administering joint federal-state welfare program).

The independent payphone providers object in particular to states' invocation of the filed-rate doctrine – the prohibition on retroactively changing approved rates. But the filed-rate doctrine has long been "a central tenet of telecommunications law," so it hardly seems unreasonable or arbitrary for the FCC to allow states to invoke that doctrine. *TON Services, Inc. v. Qwest Corp.*, 493 F.3d 1225, 1236 (10th Cir. 2007); *see Arizona Grocery Co. v. Atchison, Topeka & Santa Fe Railway Co.*, 284 U.S. 370, 390 (1932). Moreover, the filed-rate doctrine does not present an insuperable barrier to refunds or otherwise negate the FCC's position that refunds are permitted in individual cases. Indeed, the FCC expressly

recognized that several states have granted refunds notwithstanding the filed-rate doctrine. *See Refund Order*, 28 FCC Rcd. at 2640 ¶ 48 (citing Indiana and South Carolina commission decisions).

In sum, we see nothing unreasonable about how the FCC filled the statutory gap and exercised its discretion.

III

As an alternative, the independent payphone providers have sought refunds through a less direct route. They asked the FCC to order Bell Operating Companies to disgorge certain payments that those companies had received from long-distance carriers (not from independent payphone providers). The independent payphone providers would not benefit directly from such a disgorgement order. But they believed that such an order would induce Bell Operating Companies to pay refunds to the independent payphone providers as a way to avoid complying with the disgorgement order. The FCC declined to issue the requested order. The independent payphone providers renew the claim in this Court. But they lack Article III standing to pursue their claim in this Court.

In Section 276, Congress ordered the FCC to "establish a per call compensation plan to ensure that all payphone service providers are fairly compensated for each and every completed intrastate and interstate call using their payphone." 47 U.S.C. § 276(b)(1)(A). That provision responded to the development of long-distance access codes and 800 numbers that allowed callers to use payphones without depositing coins, thereby depriving payphone operators of revenue. The FCC issued a rule requiring the long-distance carriers who benefited from such "dial-around" calls to compensate

payphone providers. *Sprint Communications Co. v. APCC Services, Inc.*, 554 U.S. 269, 271-72 (2008); *see also* 47 U.S.C. § 226; 47 C.F.R. § 64.1300.

Of relevance here, the FCC stated that the eligibility of Bell Operating Companies to receive "dial-around" compensation from long-distance carriers depended on the Bell Operating Companies' compliance with Section 276. *See Refund Order*, 28 FCC Rcd. at 2633-34 ¶ 38. Bell Operating Companies, believing their rates compliant with Section 276, began collecting dial-around compensation from long-distance carriers in 1997. But as explained above, some states later concluded that Bell Operating Companies' rates had not actually been compliant with Section 276 in the several years after 1997. The independent payphone providers asked the FCC to order Bell Operating Companies to forfeit the payments they had received from the long-distance carriers during those years to the Government. The Commission declined to issue such an order. *See id.* at 2633-34 ¶ 38 n.161.

We do not reach the merits of the independent payphone providers' petitions for review on that issue because they lack Article III standing to challenge that aspect of the Commission's decision. To establish standing, the independent payphone providers must show an injury-in-fact caused by the Commission's conduct and redressable by this Court. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Here, the independent payphone providers assert an injury-in-fact: "paying years of excessive charges caused by" the Bell Operating Companies' "failure to have . . . compliant rates." Pet'rs Br. 34; *see* Oral Arg. at 14:37-14:40 ("the injury is the overcharging of rates"). But that injury is not redressable by this Court. Even if we ordered the FCC to do exactly what the independent payphone providers seek –

order Bell Operating Companies to disgorge the payments they received from long-distance carriers – the independent payphone providers would not receive any of that money. Rather, Bell Operating Companies would forfeit the money to the Government. *See* App. 847; Oral Arg. at 13:37-13:39. That would do nothing to redress the injury suffered by the independent payphone providers as a result of the allegedly excessive rates charged to them by Bell Operating Companies. *Cf. Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 106 (1998) (no standing where plaintiff "seeks not remediation of its own injury" that has abated but rather general "vindication of the rule of law").

The independent payphone providers respond with a rather creative theory of redressability. They suggest that Bell Operating Companies would rather accede to their demand for refunds than disgorge the supposedly larger amount of dial-around compensation collected from long-distance carriers. Thus, in the independent payphone providers' view, an FCC disgorgement order would in turn induce Bell Operating Companies to resolve their refund dispute with the independent payphone providers and thereby redress the independent payphone providers' injury. The independent payphone providers offer nothing beyond sheer speculation to support their bank-shot approach. And it is well-established that a "merely speculative" theory of redressability does not suffice to create Article III standing. *Sprint*, 554 U.S. at 273 (internal quotation marks omitted); *see Lujan*, 504 U.S. at 560-61; *Linda R.S. v. Richard D.*, 410 U.S. 614, 617-18 (1973); *cf. Illinois Public Telecommunications Association v. Illinois Commerce Commission*, No. 1-04-0225 (Ill. App. Ct. Nov. 23, 2005) (same conclusion on state law).

Because the independent payphone providers have not demonstrated Article III standing with respect to their dial-

around compensation claim, we lack jurisdiction to adjudicate that portion of their petitions for review.

\* \* \*

We have carefully considered all of the independent payphone providers' arguments. We deny the petitions in part and dismiss the remainder for lack of jurisdiction.

*So ordered.*

APPENDIX

## § 276. Provision of payphone service

### (a) Nondiscrimination safeguards

After the effective date of the rules prescribed pursuant to subsection (b) of this section, any Bell operating company that provides payphone service –

(1) shall not subsidize its payphone service directly or indirectly from its telephone exchange service operations or its exchange access operations; and

(2) shall not prefer or discriminate in favor of its payphone service.

### (b) Regulations

#### (1) Contents of regulations

In order to promote competition among payphone service providers and promote the widespread deployment of payphone services to the benefit of the general public, within 9 months after February 8, 1996, the Commission shall take all actions necessary (including any reconsideration) to prescribe regulations that –

(A) establish a per call compensation plan to ensure that all payphone service providers are fairly compensated for each and every completed intrastate and interstate call using their payphone, except that emergency calls and telecommunications relay service calls for hearing disabled individuals shall not be subject to such compensation;

(B) discontinue the intrastate and interstate carrier access charge payphone service elements and payments in effect on February 8, 1996, and all intrastate and interstate payphone subsidies from basic exchange and

exchange access revenues, in favor of a compensation plan as specified in subparagraph (A);

(C) prescribe a set of nonstructural safeguards for Bell operating company payphone service to implement the provisions of paragraphs (1) and (2) of subsection (a) of this section, which safeguards shall, at a minimum, include the nonstructural safeguards equal to those adopted in the Computer Inquiry-III (CC Docket No. 90-623) proceeding;

(D) provide for Bell operating company payphone service providers to have the same right that independent payphone providers have to negotiate with the location provider on the location provider's selecting and contracting with, and, subject to the terms of any agreement with the location provider, to select and contract with, the carriers that carry interLATA calls from their payphones, unless the Commission determines in the rulemaking pursuant to this section that it is not in the public interest; and

(E) provide for all payphone service providers to have the right to negotiate with the location provider on the location provider's selecting and contracting with, and, subject to the terms of any agreement with the location provider, to select and contract with, the carriers that carry intraLATA calls from their payphones.

## (2) Public interest telephones

In the rulemaking conducted pursuant to paragraph (1), the Commission shall determine whether public interest payphones, which are provided in the interest of public health, safety, and welfare, in locations where there would otherwise not be a payphone, should be maintained, and if so, ensure that such public interest payphones are supported fairly and equitably.

### (3) Existing contracts

Nothing in this section shall affect any existing contracts between location providers and payphone service providers or interLATA or intraLATA carriers that are in force and effect as of February 8, 1996.

### (c) State preemption

To the extent that any State requirements are inconsistent with the Commission's regulations, the Commission's regulations on such matters shall preempt such State requirements.

### (d) "Payphone service" defined

As used in this section, the term "payphone service" means the provision of public or semi-public pay telephones, the provision of inmate telephone service in correctional institutions, and any ancillary services.